THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLEN
BERRY *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 1—98—0359, 1—98—0708 cons.

Opinion filed May 30, 2000.

2

Rita A. Fry, Public Defender, of Chicago (Thomas F. Finegan, Assistant Public Defender, of counsel), for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Howard J. Wise, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a simultaneous but severed bench trial, the court found defendant Allen Berry guilty of first degree murder and armed robbery and sentenced him to a 30-year term of prison. The trial court also found codefendant Bobby Berry guilty of first degree murder and sentenced him to a 25-year term of prison. Both defendants appeal the trial court's denial of their motions to suppress evidence, namely, their oral and written confessions. In reviewing the motions to suppress we address the scope of an electronic search, which is a question of first impression. While the court found that the police had probable cause to arrest Allen, it also found that the police lacked probable cause to arrest Bobby. Following an attenuation hearing, the court, however, ruled that Allen's statements to the police constituted an intervening circumstance that attenuated Bobby's illegal arrest. On appeal, Allen contends that the police illegally arrested him in violation of his fourth amendment rights and the statements he made should have been suppressed. Bobby contends that his statements were a result of both defendants' illegal arrests and should have been suppressed. We affirm.

At the suppression hearing, Detective Hamilton testified that on October 15, 1995, he went to Enrico Perry's apartment and saw that Perry had been shot to death. Perry's hands were tied behind his back and a sheet covered his head. Detective Hamilton observed a leather carrying case for a Motorola cellular phone and a cigarette lighter plug-in adaptor for the phone. Hamilton saw these items in the center of the coffee table of Perry's apartment but failed to find the Motorola phone that matched these cellular phone accessories.

At the crime scene, Detective Hamilton spoke with Perry's cousin, Gregory Carter. Hamilton testified that Carter confirmed that Perry's cellular phone was missing from Perry's apartment. Carter told Hamilton that the night before the murder he had visited Perry's apartment to use Perry's cellular phone adapter and saw the cellular phone

in Perry's apartment. Carter stated that four individuals who frequented Perry's apartment were there at that time. The four individuals discussed the Motorola cellular phone. Specifically, Carter overheard one individual inquire about purchasing it, but another person advised him not to purchase it. Carter also told Hamilton that he saw one of the individuals pick up a videotape off the television set with his shirt sleeve over his hands and fingers, trying not to leave any fingerprints. Hamilton obtained the number of Perry's cellular phone from Perry's brother, Derrick Perry.

On October 19, 1995, Carter told Hamilton he knew the names of the four males who were at Perry's apartment the night before the murder. Carter stated that these four males showed up at Perry's funeral and Carter confronted them. The four individuals became argumentative and other family members separated them from Carter. He told Hamilton their names were Charles Gardner, Mario, Allen Berry and Bobby Berry, and he told Hamilton where to find the defendants.

On October 29, 1995, Hamilton and three Chicago police detectives went to 6833 South Hamilton, where they believed they could find and talk with the defendants. The detectives did not have an arrest warrant or a search warrant. Hamilton and the other detectives spoke with a woman who identified herself as the defendants' mother. Hamilton explained that they were looking for the defendants, and she replied that "Bobby is right there in that bedroom and Allen is downstairs with his girlfriend."

After Bobby came out of his room and started to speak with the detectives, defendants' mother pointed to the basement and said "Allen is down there." Hamilton knocked on the door, identified himself, and stated he wanted to talk with Allen. Allen told him to come down to the basement. Hamilton descended the stairs and saw a Motorola cellular phone on a dresser near Allen that was identical to the phone missing from the victim's apartment. Hamilton asked if it was Allen's phone and Allen stated it was. Hamilton then asked if he could look at the phone and Allen stated, "Go right ahead." Hamilton turned on the phone, pushed recall and pound, and obtained the number of the cellular phone. Hamilton immediately recognized the number as the one the victim's brother gave him for the victim's phone. Hamilton asked Allen how long he had the phone and Allen responded "two months." Hamilton advised Allen of his *Miranda* rights and arrested him. Hamilton then instructed the other detectives to arrest Bobby.

At the station, police "Mirandized" and questioned both Bobby and Allen. Both initially denied any involvement in the crime. After

the police confronted Allen with the fact that he possessed the victim's cellular phone, Allen gave an oral confession. Early the next morning, the police detectives told Bobby that his brother Allen had given a statement implicating Bobby in the murder. Bobby did not believe the detectives. The detectives then brought Allen to the door of the room where Bobby was being interviewed. Bobby asked Allen if he made a statement. Allen raised his right hand and said, "I'm grandma, man, I'm grandma." At approximately 7 a.m., Bobby gave the police an oral confession and later a written confession.

The trial court found that the police had probable cause to arrest Allen but did not have probable cause to arrest Bobby. The trial court rejected Allen's argument that Hamilton did not have authority to retrieve the phone number of the cellular phone to determine if it was the victim's cellular phone. The court ruled that because Allen gave permission to Detective Hamilton to look at the phone, Hamilton could perform a "minimally intrusive" examination of the phone to determine its phone number.

The State then filed a motion to demonstrate that independent factors attenuated Bobby's confession from Bobby's illegal arrest. Following a hearing, the trial court found that Allen's confession and Allen's conversation with Bobby, after Bobby's arrest, were independent factors that led to Bobby's confession and purged it of any taint from the illegal arrest. The trial court therefore admitted the confessions of both Bobby and Allen into evidence.

## ANALYSIS

Although at trial the defendants called two witnesses to contest the police testimony that defendants' mother consented to their entrance into the house and that Allen told Detective Hamilton that he could look at the cellular phone, defendants on appeal do not challenge these facts. Defendants argue that, despite the court's factual finding and the police testimony, the police had no probable cause to arrest Allen. Defendants further argue that Detective Hamilton had no authority to turn on the cellular phone and retrieve its telephone number because that action exceeded the scope of the consent given by Allen.

The defendants bring their challenge of the evidence under both the United States and Illinois Constitutions. Both the United States and the Illinois Constitutions govern the conduct of police officers in performing warrantless arrests and searches and prohibit unreasonable searches and seizures. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6; *People v. Buss*, 187 Ill. 2d 144, 204 (1999). These constitutional provisions allow the police to make a warrantless arrest

but only if the police have knowledge which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant. *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). In reviewing a probable cause challenge, the court evaluates the police conduct in accordance with practical, everyday principles. *People v. Kidd*, 175 Ill. 2d 1, 22 (1996). Probable cause for an arrest exists when the facts and circumstances known to the police would justify the belief, in a person of reasonable caution, that the person arrested has committed an offense. *People v. Lumpp*, 113 Ill. App. 3d 694 (1983). The court determines under the totality of the circumstances whether the evidence available to the arresting officer at the time of the arrest provides a reasonable basis for the officer to believe that the suspect committed an offense. *People v. Dizon*, 297 Ill. App. 3d 880, 885 (1998). When a defendant solely challenges the trial court's legal conclusions for denying a motion to quash arrest and suppress evidence, as in this case, our review is *de novo*. *People v. Wright*, 183 Ill. 2d 16, 21 (1998).

## I. Probable Cause To Arrest Allen

■ Defendants first argue that the discovery of the victim's cellular phone in Allen's possession did not give the police probable cause to arrest Allen. According to defendants, Allen could have obtained the phone in a number of legitimate ways and, at most, the discovery of the cellular phone by the police gave the police a "suspicion" that would permit them to question Allen. However, this argument fails to address the substantial evidence in this case which linked Allen to the murder. While the officers did not visit the defendants' home until two weeks after the crime, a probable cause analysis does not require the police to possess proof beyond a reasonable doubt. The police may arrest the defendant if it is more probably true than not that the evidence available to them supports the conclusion that defendant committed the crime. *People v. House*, 141 Ill. 2d 323, 370 (1990). Here, at the time of Allen's arrest, the police, as a result of their investigation, had the information connecting Allen to the crime. Gregory Carter, the victim's cousin, connected Allen to the victim, placed him at the crime scene and reported that the victim's cellular phone, the phone found in Allen's apartment, was taken from the victim's apartment at or near the time of the murder. During the course of his investigation, Detective Hamilton learned the names and address of the Berry brothers, who had been seen in the victim's apartment within 24 hours of the murder. Detective Hamilton learned from the victim's cousin that a Motorola cellular phone was missing from the victim's apartment. The victim's brother provided Hamilton with the phone number of the missing cellular phone.

Carter, the victim's cousin, told Hamilton that Bobby Berry had talked to the victim about purchasing the victim's cellular phone. Further, Carter described suspicious behavior and told Hamilton that it was Bobby Berry who concealed his fingerprints by using his sleeve to pick up a videotape while he was at the victim's apartment. Immediately after Hamilton confirmed that the phone found in Allen's room belonged to the victim, Hamilton asked Allen how long he had had the phone and Allen lied. Allen told Detective Hamilton that he had had the cellular phone for two months. Hamilton, however, knew that the missing phone had been in the victim's apartment within 24 hours of the murder and at that time Allen together with his brother and friends discussed with the victim buying that phone. Allen's false statement as to how long he had the phone, his possession of the victim's property, his fight with Carter at the funeral, his presence at the victim's apartment when the victim was last seen alive, and his discussing with the victim the purchase of the victim's phone all provide a reasonable basis to support the conclusion of Detective Hamilton that Allen committed the victim's murder. Based on the totality of these facts, a reasonable person could conclude that Allen committed the murder and that the cellular phone was evidence of the crime. Therefore, the trial court's finding that the police had probable cause to arrest Allen was proper.

## II. Search and Seizure of the Cellular Phone

Defendant next argues that even if Detective Hamilton had probable cause to arrest Allen, he obtained this probable cause by performing an illegal search of the cellular phone in Allen's possession. The State argues that Allen consented to Hamilton's examination of the cellular phone and that Hamilton did not exceed this consent by turning on the phone. Since the police were lawfully on the premises after defendants' mother consented to their entry, we turn to an examination of whether the search and seizure of the cellular phone fell within one of the recognized exceptions to the fourth amendment warrant requirement. If the incriminating nature of the phone was not readily apparent to Hamilton to allow search and seizure of the phone under the plain view exception, then either consent or probable cause to believe the phone was stolen was required to legally justify the additional action taken by the police in activating the phone and retrieving the electronic identification information. *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983); *Arizona v. Hicks*, 480 U.S. 321, 327, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153-54 (1987). We therefore examine the search and seizure of the phone under the plain view exception, under a consent analysis and under the traditional probable cause standard.

## A. Search and Seizure of Cellular Phone Lawful Under the Plain View Exception

■ In order for evidence seized during a search to qualify for the plain view exception to the warrant requirement, it is necessary that: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent. *Coolidge v. New Hampshire*, 403 U. S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); see also *People v. Jones*, 269 Ill. App. 3d 797, 804 (1994). The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item firsthand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy. *Illinois v. Andreas*, 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324 (1983). The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has prior fourth amendment justification and who has probable cause to suspect that the item is connected with criminal activity. *Andreas*, 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319.

In *Hicks*, the United Stated Supreme Court decided whether the plain view doctrine could be invoked when the police have less than probable cause to believe that the item in question is evidence of a crime or is contraband. The court concluded that probable cause is a requirement for invoking the plain view doctrine. In *Hicks*, the police entered an apartment without a warrant to investigate a shooting. The initial entry and search were justified by the exigent circumstance of the shooting. While investigating the shooting, one of the police officers noticed two sets of stereo components, which seemed out of place in the squalid apartment. Suspecting that the stereo components were stolen, the officer read and recorded their serial numbers. The officer had to move some of the components of the stereo in order to see the serial numbers.

The Supreme Court, relying on *Andreas*, concluded that merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest. *Andreas*, 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319. Thus, the mere recording of the serial numbers did not constitute a seizure. However, the moving of the equipment did constitute a "search" separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of the entry into the apartment by the police officers. Therefore, the Court recognized that while it is well established that under certain circumstances the police may

seize evidence in plain view without a warrant, nevertheless, such seizure or search requires probable cause to believe the item is evidence of a crime or is contraband. "No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises." *Hicks*, 480 U.S. at 327, 94 L. Ed. 2d at 355, 107 S. Ct. at 1154.

Prior to *Hicks*, however, several state courts required only reasonable suspicion as opposed to probable cause for minimal inspection of items discovered in plain view. See *People v. Dorris*, 110 Ill. App. 3d 660, 662 (1982). In *Dorris*, the court held that when police have a reasonable suspicion that an item in plain view is stolen property, the minimal additional intrusion involved in checking external identification numbers is proper. *Dorris*, 110 Ill. App. 3d at 662. As noted by Professor LaFave, these courts reasoned that "the minimal additional intrusion which results from an inspection or examination of an object in plain view is reasonable if the officer was first aware of some facts and circumstances which justify a reasonable suspicion (not probable cause, in the traditional sense) that the object is or contains a fruit, instrumentality, or evidence of crime." 3 W. LaFave, Search & Seizure § 6.7(b), at 416 (3d ed. 1996).

Professor LaFave noted, however, that the *Hicks* Court rejected this approach in its attempt to create a bright-line rule for when the police can seize an object under the plain view doctrine. The *Hicks* Court also refused to adopt a distinction in plain view searches between a "plain view inspection" and a "full blown search." *Hicks*, 480 U.S. at 328-29, 94 L. Ed. 2d at 356, 107 S. Ct. at 1154. Therefore, Professor LaFave concluded that, under *Hicks*, even if the police have reasonable suspicion that the slight movement of an object may produce evidence of criminality, such slight movement is impermissible if it occurs during a search and seizure unrelated to the objectives of the initial authorized intrusion. 3 W. LaFave, Search & Seizure § 6.7(b), at 419 (3d ed. 1996).

In the present case, unlike *Hicks*, there was no unrelated search and seizure of the cellular phone. In *Hicks*, the police were investigating a shooting when they entered defendant's apartment. However, once inside the apartment, the police saw the new stereo equipment and suspected that it might be stolen since the rest of the apartment appeared poverty-stricken. The movement of the stereo equipment was wholly unrelated to the police investigation of the shooting and thus constituted an unlawful search. In the present case, however, the police were aware that the victim's cellular phone was missing as of

the night of the victim's murder. They knew that the phone was a Motorola phone and that Allen and Bobby had talked to the victim about buying the phone. Further, the police knew that the defendants were in the victim's apartment within 24 hours of the murder and that they became argumentative when Carter confronted them at the victim's funeral. Thus, when Hamilton entered Allen's room and saw the cellular phone on the dresser, he immediately suspected that it was the victim's phone. Unlike the search in *Hicks*, where the police had a vague suspicion that the stereo equipment might be stolen solely based on the squalid nature of the rest of the apartment, here Detective Hamilton had more than a vague suspicion that the phone was evidence of the homicide. As such, the search and the seizure were directly related to Detective Hamilton's investigation of the Perry homicide.

■ Against that background, we analyze whether the plain view exception to the warrant requirement is satisfied by the facts of this case. Here, the first factor of the plain view doctrine, a lawful intrusion, has been met. The defendants' mother consented to the police entry into the home in order to talk to her two sons about the Perry homicide. The second factor, that the police "inadvertently" discover the evidence, has also been established. The cellular telephone was sitting on top of a dresser in Allen's room, where Allen was located when Detective Hamilton inadvertently saw it and recognized it. The final requirement, that the incriminating nature of the evidence be immediately apparent, is also satisfied.

Notably, this third factor does not mean that the criminal nature of the items seized must be apparent at first glance; rather, it requires " 'probable cause to associate the property with criminal activity.' " *United States v. Rivera*, 825 F.2d 152, 157 (7th Cir. 1987), quoting *Brown*, 460 U.S. at 741-42, 75 L. Ed. 2d at 513, 103 S. Ct. at 1543. This rationale applies here; Detective Hamilton recognized the phone as a Motorola phone identical to the one missing from the victim's apartment. He knew the defendant and his brother, with two other friends, discussed buying the victim's phone with the victim within 24 hours of his murder. Thus, with the information Hamilton had before the seizure of the phone, Hamilton ascertained that the phone probably was evidence from the Perry homicide. Based on the totality of the circumstances, the incriminating nature of the phone was apparent and Hamilton had probable cause to associate the cellular telephone with the Perry homicide. As such, all three requirements of the plain view doctrine have been satisfied.

## B. Search and Seizure of Cellular Phone Authorized
## By Allen's Consent

■ Even if we were to find that the incriminating nature of the phone was not immediately apparent but only became apparent after a seizure and search of the phone, and therefore the third factor of the plain view exception had not been satisfied, the search and seizure of the phone were lawful because Allen gave Hamilton consent to examine the phone. An individual may consent to a search conducted without a warrant, thereby eliminating the need for probable cause. *People v. Phillips*, 264 Ill. App. 3d 213 (1994). In this case, Detective Hamilton was authorized by Allen to look at the phone. No such authorization occurred prior to the officer moving the stereo equipment in the *Hicks* case. The movement of the equipment in *Hicks* constituted a "search" not only unrelated to the lawful objective of the entry into the apartment, but also unauthorized, therefore requiring probable cause. *Hicks*, 480 U.S. at 327, 94 L. Ed. 2d at 355, 107 S. Ct. at 1153-54. However, Hamilton's operation of the cellular phone constituted an authorized search directly related to the Perry homicide and those facts distinguish this case from *Hicks*. Therefore, even if the third factor of the plain view exception had not been satisfied because the incriminating nature of the phone was not immediately apparent, once Allen gave his consent, the search and seizure of the phone were lawful.

Under the consent analysis, the only question that remains is whether Detective Hamilton exceeded the scope of his search of the phone when he turned on the phone and retrieved the victim's number. Defendant argues that by pressing the recall button on the telephone to pull up the number to the cellular phone, the police exceeded the consent to search. Defendant claims that the police conducted an "electronic search" which turned the telephone into a declarant. The State argues that when Hamilton asked to look at the phone and Allen told Hamilton, "Go right ahead," a typical reasonable person would understand this to mean that the officer had permission to inspect the phone, which could only be accomplished with phone activation. The State further maintains that it is not reasonable to assume that the scope of the consent given by Allen consisted only of allowing the detective to view the physical condition of the phone.

In determining the scope of consent with respect to electronic devices, we turn for guidance to a line of federal cases involving electronic searches. As defendant points out, with the age of computers, the scope of an electronic search is a matter of first impression. We find the rationale of the federal courts in similar situations involving electronic searches instructive. Generally, when the police rely

upon consent as the basis for a warrantless search, they have no more authority than they have been given by the voluntary consent of the defendant. 3 W. LaFave, Search & Seizure § 8.1(c), at 610 (3d ed. 1996). The standard for determining if a police officer acted within the scope of a suspect's consent under the fourth amendment is objective reasonableness, which requires consideration of what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 300, 111 S. Ct. 1801, 1803-04 (1991).

In *United States v. Snow*, 44 F.3d 133 (2d Cir. 1995), the court, interpreting *Jimeno*, found that defendant's lack of knowledge of what the officer is searching for does not change the effect of a "general consent." The court concluded that it is self-evident that a police officer seeking general permission to search is looking for evidence of illegal activity. *Snow*, 44 F.3d at 135. It further noted that if the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way. *Snow*, 44 F.3d at 135. In *United States v. Reyes*, 922 F. Supp. 818 (S.D.N.Y. 1996), the court adopted the reasoning in *Snow* and declined to suppress the phone numbers linking the defendants to the crime which were obtained from the search of a pager and cellular telephone. The court concluded that the general consent must be taken to include consent to search the memory of the electronic devices. *Reyes*, 922 F. Supp. at 834.

In applying these principles to the present case, we must consider the totality of the circumstances surrounding the exchange between Allen and Detective Hamilton in order to determine whether a typical reasonable person would have believed that the scope of Allen's consent included permission for the officer to retrieve electronic identification from the cellular phone. *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 300, 111 S. Ct. at 1803; *People v. Jones*, 269 Ill. App. 3d 797, 804 (1994). In analyzing the issue of the scope of a suspect's consent, courts examine the stated objective of the police officer's request to search that led to the consent given and whether the officer "inform[ed] the suspect of the reasonable parameters of his inquiry." *People v. Baltazar*, 295 Ill. App. 3d 146, 150 (1998).

Allen argues that when he stated, "Go right ahead," to Hamilton's question whether he could look at the phone, that did not include permission to turn the phone on and retrieve the electronic identification. Allen relies on *Baltazar*, where the court found a suspect's affirmative response to an officer's request to "take a look" in the back of the suspect's U-Haul did not give the officer consent to conduct a thorough search through the boxes in the U-Haul's cargo area. Before

obtaining this consent, the officer asked the defendant where he was going and what was in the rear of his U-Haul. The defendant explained that all of his personal belongings were in the cargo hold of the truck because he was moving to Detroit. The officer asked, " '[C]an I take a look?' " The court determined that defendant's affirmative response, " 'sure,' " reasonably communicated to the detective consent only to look into the truck to confirm it in fact contained what the defendant claimed it did, namely, his personal belongings. *Baltazar*, 295 Ill. App. 3d at 151. After moving a couple of couches, the officer noticed three large cardboard boxes, which he opened, and discovered 188 pounds of cannabis. The court held that the officer exceeded the scope of the defendant's consent when he not only looked in the back of the U-Haul but searched through the boxes. *Baltazar*, 295 Ill. App. 3d at 151.

■ In the present case, Allen gave similar consent to the police as given in *Baltazar*, namely, a short affirmative response to a general request to search or "look at" defendant's property. Like the response in *Baltazar*, Allen's short affirmative response communicated to the detective consent to look at the phone to confirm what the defendant claimed, namely, ownership of the phone. Here, just prior to making the request to look at the phone, Detective Hamilton specifically asked Allen if the phone was his and Allen answered "Yes." Hamilton then said, "You mind if I take a look at it?" and Allen replied, "No. Go right ahead." Unlike the boxes searched in *Baltazar*, the police did not search additional property, but simply pressed a button to confirm Allen's claim of phone ownership. Once he retrieved the phone number, Hamilton immediately recognized the number as the victim's number, which he had received from the victim's brother.

When Allen consented to Hamilton's request to look at the phone he was certainly aware of the fact that Detective Hamilton was investigating the Perry homicide. Further, applying the rationale in *Snow*, even if defendant did not know specifically what Hamilton was looking for, that did not change the effect of defendant's general consent to look at the phone. *Snow*, 44 F.3d 133. Moreover, based on Hamilton's specific question about the ownership of the phone, the defendant reasonably knew that Hamilton's reason for looking at the phone was to determine ownership. Hamilton's question as to the phone's ownership immediately preceded his request to look at the phone. In this context we conclude that Allen's affirmative response reasonably communicated consent to Hamilton to look at the phone to confirm that defendant owned the phone. At that point, phone ownership was the only subject of the only conversation that had taken place between Allen and Hamilton immediately preceding Hamilton's activation of the phone. Activating the phone in order to obtain the

number of the cellular phone could have ruled out the victim's ownership of the phone and thereby confirmed Allen's claim that he owned the phone.

We find that a reasonable person would have understood the exchange between Hamilton and Allen Berry to mean simply that Allen consented to Hamilton confirming the only matter under discussion, which was Allen's claimed ownership of the phone. The defendant placed no explicit limitations on the scope of the search, either when he gave his general consent or during the time the officer examined the phone. *People v. Phillips*, 264 Ill. App. 3d 213, 224 (1994).

Based on the totality of the circumstances, Detective Hamilton did not exceed the scope of defendant's consent by activating the phone to determine ownership, but acted within the reasonable parameters of his authority.

### C. Hamilton Had Probable Cause to Search and Seize the Cellular Phone

■ Furthermore, even in the absence of consent to look at the phone, and in the absence of the incriminating nature of the phone being readily apparent, we find that Hamilton had probable cause to conduct a search of the cellular phone to determine the owner of the phone. Here, police conducted an "electronic search." The police were searching for a cellular phone with a specific make and model that disappeared after the victim was murdered. The probable cause standard requires only facts sufficient to " 'warrant a man of reasonable caution in the belief' [citation] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535, 1543 (1983). Further, probable cause for a search is a flexible, commonsense standard.

Based on the facts of this case, there were sufficient circumstances to warrant a man of reasonable caution to believe that the cellular phone was property stolen from the murder victim. Hamilton testified that he saw the cellular phone in plain view after receiving permission to enter the basement area of the defendants' apartment. Hamilton immediately recognized the possible incriminating nature of the phone because it matched the cellular phone missing from the victim's apartment and was in the possession of Allen, who was present at the victim's apartment when the victim was last seen alive. Moreover, he knew the same type of phone was the subject of conversation between the victim and the individuals last seen in the victim's apartment, including Allen and his brother, before the victim's murder. He asked

Allen if the phone was his and Allen responded, "Yes." Hamilton asked Allen if he could take a look at the phone. Allen responded, "Go right ahead." Hamilton knew the victim's phone number. Hamilton thus examined this piece of evidence to confirm its apparent evidentiary value to the crime he was investigating. Based on information previously developed during his investigation of the Perry homicide, his observations, and his conversation with Allen, Hamilton had facts sufficient to warrant a man of reasonable caution to believe that the phone in plain view was stolen property and thus the search and seizure of the phone satisfied the probable cause standard.

■ The search and seizure of the telephone can be legally justified under the plain view exception to the warrant requirement or justified as the result of the consent given by Allen to Detective Hamilton or justified under the traditional probable cause standard. Having concluded that the trial court properly denied Allen's motion to quash his arrest and suppress evidence, we next address the contention that the trial court erred by finding Allen's confession was an intervening circumstance which purged the taint of Bobby's illegal arrest and rendered Bobby's confession admissible.

### III. Intervening Factors Attenuated Bobby's Illegal Arrest

■ Bobby does not contest that he gave his statement voluntarily but argues that his illegal arrest renders his statement inadmissible. A suspect's statement made following an illegal arrest, however, is not automatically subject to suppression. The court must determine whether the police obtained the statement by exploitation of the illegal arrest. *People v. Jennings*, 296 Ill. App. 3d 761, 763 (1998). Therefore, "[t]o establish that a statement made by a suspect in custody is admissible, notwithstanding an illegal arrest, the State must show that the statement was a product of the defendant's free will, independent of any taint of the illegal arrest." *People v. Lekas*, 155 Ill. App. 3d 391, 411 (1987). The State must show by clear and convincing evidence that the statement was a product of the defendant's free will. *People v. Pierson*, 166 Ill. App. 3d 558, 563 (1988). The court considers the following factors in evaluating the admissibility of a statement when defendant was initially arrested in violation of the fourth amendment: (1) whether the defendant received any *Miranda* warnings; (2) the time period between the arrest and the statement; (3) the existence of any intervening circumstances; and (4) "particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62 (1975). Where both the facts and the credibility of the witnesses are uncontroverted, the question presented becomes a legal

one, subject to *de novo* review. *Foskey*, 136 Ill. 2d at 76. Here, defendant concedes that he disputes neither the credibility of the witnesses nor the facts. As such, we review the trial court's decision under a *de novo* standard. *People v. Wright*, 183 Ill. 2d 16, 21 (1998).

■ Bobby first contends that Allen's "illegal" arrest taints Allen's confession and these events cannot serve as intervening causes to purge the taint of Bobby's illegal arrest. For the reasons previously discussed, Allen's arrest was not illegal and therefore Allen's confession was not tainted evidence. Bobby alternatively argues that, even if the police properly arrested Allen, Allen's confession was self-serving, unreliable, and cannot constitute an intervening factor to attenuate Bobby's confession. In his oral and written statements, Allen denied pulling the trigger; he, however, admitted to going to Perry's apartment with Charles Gardner, Mario, and Bobby, and being in the apartment when either Mario or Charles Gardner shot Perry. He also admitted to placing a sheet over Perry's body. Allen's confession contained facts that were independently corroborated. For example, Carter confirmed that Charles, Allen, Bobby and Mario were together at Perry's apartment and the police discovered Perry's body covered by a sheet. We therefore reject Bobby's argument that Allen's confession was unreliable.

We note that statements of other suspects may serve as an intervening factor to purge the taint of a defendant's illegal arrest. In *People v. Wright*, 294 Ill. App. 3d 606 (1998), the police illegally arrested and transported defendant to the police station along with his brother, who was properly arrested on an outstanding warrant. At the station, defendant's brother gave a statement to police implicating defendant in a murder. Defendant initially told the police that the gun accidentally went off. After being confronted with his brother's written statement and his alleged alibi's statement denying she was with defendant, defendant gave a written confession. Affirming the admission of the confession into evidence despite defendant's illegal arrest, the court first found that defendant's brother provided independent probable cause to permit the police to detain and question defendant. *Wright*, 294 Ill. App. 3d at 613. Next, the court concluded that the events of the police station were sufficient intervening factors to render the statement admissible. The court noted that, before defendant confessed, defendant's brother implicated him, the police confronted defendant with his brother's statement, the police repeatedly gave defendant *Miranda* warnings, and the police treated defendant well. *Wright*, 294 Ill. App. 3d at 613-14.

Similarly, in this case, Allen's confession provided the police independent probable cause to detain and question Bobby. Once the police

obtained Allen's statement implicating himself and Bobby, they had independent probable cause to detain Bobby. Like the brother's statement in *Wright*, Allen's statement was not illegally obtained and was sufficiently reliable to provide probable cause to detain Bobby. Moreover, as both *Wright* and *Lekas* note, to require the police at this point to release Bobby and then arrest him again when he reached the sidewalk would place an unreasonable burden on the police. *Lekas*, 155 Ill. App. 3d at 414; *Wright*, 294 Ill. App. 3d at 613.

The *Brown* factors additionally favor the admissibility of Bobby's statement. Before questioning Bobby, the police gave him *Miranda* warnings. Bobby confessed approximately seven hours after his initial illegal arrest. During this time period, he was not subjected to constant interrogation. *Wright*, 294 Ill. App. 3d at 614. With respect to the other two *Brown* factors, this court has recently recognized that the existence or lack of any intervening factors and the conduct of the police in obtaining the statement have emerged as the most relevant factors. *Jennings*, 296 Ill. App. 3d at 765 (citing cases). Moreover, statements of other suspects may serve as an intervening factor to purge the taint of a defendant's illegal arrest. *People v. Pierson*, 166 Ill. App. 3d 558, 564 (1988).

We find that application of these two factors further supports the conclusion that the admission of Bobby's confession was constitutionally permissible. Allen's incriminating statement was an intervening factor. Following Bobby's arrest, Bobby refused to make a statement and denied his involvement in the crime. The police then told Bobby that Allen confessed and implicated Bobby. The police allowed Bobby to see and speak with Allen. Immediately after receiving this information about Allen's confession and after communicating with Allen, Bobby confessed. Therefore, Bobby's confession was not a product of his illegal arrest but was triggered by confronting Bobby with the fact that Allen, his brother, had confessed and implicated Bobby.

In addition, the police did not act flagrantly or confront Bobby with tainted evidence to induce him to confess. The record reflects no evidence of police or prosecutorial misconduct but, rather, indicates that Bobby was treated well. Therefore, Bobby's contact with his brother Allen in the police station, together with the police confronting Bobby with Allen's confession well after Bobby's illegal arrest, constituted sufficient intervening factors to purge the taint of the illegal arrest of Bobby.

## CONCLUSION

For the foregoing reasons, the trial court's finding of probable cause regarding the arrest of Allen Berry was proper. We conclude the

prosecution demonstrated by clear and convincing evidence that Bobby's confession was the product of Bobby's free will, independent of any taint from the illegal arrest. Therefore, the trial court's decision that Bobby Berry's statements were sufficiently attenuated from his illegal arrest was not erroneous. We affirm the convictions and sentences of each defendant.

For the foregoing reason, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and GALLAGHER, JJ., concur.