THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS JONES, Defendant-Appellant.

Fifth District   No. 5—02—0398

Opinion filed November 7, 2003.—Rehearing denied December 9, 2003.

Herbert J. Lantz, Jr., of Belleville, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

After a routine traffic stop of the defendant, Carlos Jones, police discovered in his possession a small wooden box, which contained a pipe and cannabis, and two loaded handguns. Following a stipulated bench trial, the defendant was convicted of aggravated unlawful use of a weapon. Prior to the trial, the defendant moved to suppress the seized evidence. The defendant appeals the trial court's order denying this motion. For the reasons stated below, we reverse the trial court's order denying the defendant's motion to suppress, and we reverse the defendant's conviction and sentence.

## I. BACKGROUND

On the evening of February 18, 2001, the defendant and his young son were driving on Route 15 in Belleville when Illinois State Trooper Christopher Gebke observed that the defendant's taillights on his pickup truck were not operating. Gebke effected a routine traffic stop that ultimately yielded a small wooden box, which contained a four-inch-long pipe and a small amount of cannabis, and two loaded handguns. The defendant was arrested and charged by information on February 20, 2001, with one count of aggravated unlawful use of a weapon in violation of section 24—1.6 of the Criminal Code of 1961 (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2000)). The criminal information alleged that the defendant had knowingly carried an uncased, loaded revolver in his vehicle. On July 24, 2001, the defendant filed a motion to suppress. The motion sought to exclude the seized evidence on the basis that he had been arrested without a warrant or probable cause following an illegal search of his person and vehicle. The trial court conducted a hearing on the motion on December 13, 2001, where Gebke and the defendant testified.

### A. Trooper Christopher Gebke's Testimony

Gebke testified that on February 18, 2001, he observed the defendant's vehicle traveling east on Route 15 at approximately 10:35 p.m. The vehicle's taillights were not working, so he initiated a traffic stop. He approached the defendant's vehicle and informed the

defendant that his taillights were not working. He asked the defendant to produce his driver's license and the defendant complied. At this point, Gebke did not suspect the defendant of having committed any crime other than having inoperable taillights.

Gebke further testified that when the defendant leaned forward, his shirt pocket opened and he observed a small wooden box that he recognized as drug paraphernalia. He made this conclusion based on his training and experience. He asked the defendant what he had in his pocket, and the defendant replied that he had cigarettes. Gebke stated, and the defendant disputed, that the defendant voluntarily handed him the box. Once Gebke had the box in his custody, he opened it and confirmed that it contained a pipe and what he thought was cannabis. He asked the defendant to step out of the vehicle, and he testified that his purpose in doing so was to secure the defendant with handcuffs. After he asked the defendant to step out but before the defendant complied, it appeared to Gebke that the defendant was pushing something in between the seats, because he observed the defendant's right hand moving. Gebke observed the butt of a gun protruding from the front seat cushion the moment the defendant exited the vehicle.

Gebke testified that he handcuffed the defendant, retrieved the weapon (which was loaded), and placed the defendant in the squad car. He did not have a warrant, nor did he ask the defendant if he could search the truck. When he returned to the defendant's vehicle, the defendant's son was crying, so he asked him if he would like to sit in the squad car with his father. Once the defendant's son was secured, Gebke searched the defendant's vehicle and discovered another loaded handgun behind the seat in a small black bag, which also contained bullets. Gebke stated that he returned to the defendant's vehicle to perform an inventory search incident to the arrest, because he planned to have the vehicle towed.

With regard to the box, Gebke testified that he did not know where to purchase one like it and that he did not know the purpose for which it was manufactured. He described the dimensions of the box as approximately two inches wide, four and a half inches tall, and three-quarters of an inch thick. He stated that the box had a small lid on top. He conceded that the box could contain a variety of nonillicit items and that it did not have only one purpose.

## B. Defendant's Testimony

The defendant was the only other witness to testify at the suppression hearing. The defendant testified that Gebke approached his vehicle, informed him that his taillights were out, and asked him for

some identification. Gebke never advised him that he was going to search him or his vehicle, nor did he produce a warrant to do so. Further, Gebke did not inform him that he did not have to agree to being searched, and the defendant did not feel free to leave.

The defendant further testified that he had a wooden box in his front shirt pocket. He recalled Gebke asking him what he had in his pocket and that he had responded that he had cigarettes. Gebke did not ask him what was inside the box. The defendant disputed that he handed the box to Gebke voluntarily. Instead, the defendant testified that Gebke took the box from his pocket after the defendant attempted to button his pocket closed. Gebke opened the box and looked inside, at which time he asked the defendant to exit the vehicle and placed him in handcuffs.

Like Gebke, the defendant testified that the box could have contained other items—that it could serve purposes other than holding cannabis. At the conclusion of the hearing and in support of his motion, the defendant asked the court to consider *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872 (1994), and *People v. Innis*, 237 Ill. App. 3d 289, 604 N.E.2d 389 (1992), for the proposition that the box found in the defendant's possession was not a single-purpose container.

## C. Trial Court's Findings and Orders

On January 2, 2002, the trial court entered an order granting the defendant's motion in part and denying the motion in part. The trial court suppressed the evidence seized as a result of Gebke's search of the box and denied the motion with regard to the two weapons seized from the defendant's truck.

With regard to the evidence seized in relation to the box, the trial court granted the motion and relied on *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872 (1994). The court in *Evans* held that the small wooden box in that case, very similar to that found in the defendant's possession in the instant matter, should have been suppressed because it was not a single-purpose container and therefore could not provide the officer with probable cause to search it. *Evans*, 259 Ill. App. 3d at 655, 631 N.E.2d at 876. The court in *Evans* described a single-purpose container as a container that by its nature cannot support a reasonable expectation of privacy because its contents can be inferred from its outward appearance and the container can reasonably have no legitimate purpose other than the concealment of contraband. *Evans*, 259 Ill. App. 3d at 655, 631 N.E.2d at 876.

With regard to the weapons, the trial court denied the defendant's motion to suppress the loaded handguns seized from the truck, finding that they were not tainted under the "fruit of the poisonous tree"

doctrine. In so holding, the trial court reasoned that Gebke had the right to remove the defendant from his truck and that his seizure of the weapons was justified based on Gebke's plain view thereof. The trial court explained that Gebke's reason for asking the defendant to exit the vehicle was immaterial to determining whether the search of the vehicle was constitutional.

On February 13, 2002, a pretrial conference was held wherein the defendant waived his right to a jury trial. Additionally, the trial court acknowledged on the record that it may have made a mistake of law in ruling on the defendant's motion to suppress. The trial court believed that the portion of its order suppressing the evidence related to the box was erroneous because when it ruled on the motion it had not been aware of section 3.5 of the Drug Paraphernalia Control Act (the Act) (720 ILCS 600/3.5 (West 2000)). The trial court further explained that there had been a "change in the statute wherein one[-]hitter boxes are drug paraphernalia and illegal per se," and it further stated that "[the *Evans*] case predates the change in the statute." This led the trial court to conclude that Gebke's recognition of the box in the defendant's pocket as drug paraphernalia would be akin to a plain viewing of contraband.

On March 14, 2002, the defendant and the State stipulated to a bench trial and further stipulated that the evidence adduced at the suppression hearing would serve as the evidence therein. At the outset of the trial, the defendant moved to renew his motion to suppress on the basis that the Act, which the trial court had relied upon in announcing that it had made a mistake in ruling upon the motion to suppress, had been effective at the time the cases submitted in support of the motion had been decided. The defendant argued that wooden boxes are not listed in the "definitions" section of the Act— section 2(d)(5) (720 ILCS 600/2(d)(5) (West 2000)). However, upon the trial court's request, the defendant was unable to tender a copy of the version of the statute that he claimed to be in effect prior to 1994. The defendant argued that if the suppression motion was granted regarding the box, it should likewise be granted regarding the weapons under the "fruit of the poisonous tree" doctrine, *i.e.*, the weapons should be suppressed because Gebke's removal of the box from the defendant's pocket constituted an illegal search.

The trial court denied the defendant's renewed motion to suppress and stated that it was considering reversing itself on the portion of its order dated January 2, 2002, suppressing the box and cannabis. The trial court continued to believe that suppressing the evidence related to the box was a mistake, based on the Act and the fact that the authorities cited by the defendant predated the Act. The trial court

verbally reversed its order suppressing the evidence related to the box, effectively denying the defendant's motion to suppress in its entirety.

On March 25, 2002, the trial court entered a written order finding the defendant guilty of the charge stated in the criminal information, and the court set his sentencing for May 14, 2002. On April 15, 2002, the trial court entered another written order in which it repudiated its earlier reliance on the single-purpose-container doctrine. The court concluded that its order dated January 2, 2002, suppressing the evidence related to the box was a mistake. The trial court reasoned: "[The] box is drug paraphernalia and criminal contraband under the Illinois Drug Paraphernalia Control Act [citation]. As such, [Gebke's] plain view observation of the device and seizure thereof is permissible." Based on the stipulated facts at the trial, the trial court found the defendant guilty of aggravated unlawful use of a weapon.

On April 24, 2002, the defendant filed a motion asking the trial court to reconsider its previous orders denying his motions to suppress and its judgment finding the defendant guilty. The trial court denied the defendant's motion to reconsider and posttrial motions on May 14, 2002, and sentenced him to pay a $300 fine and court costs and to serve one year of conditional discharge. The defendant made a timely appeal.

## II. ANALYSIS

On appeal, the defendant argues that the trial court erred in denying his motions to suppress the evidence. We agree.

■ "Generally, a trial court's decision on a motion to suppress evidence is subject to reversal only if it is clearly or manifestly erroneous." *People v. Thomas*, 198 Ill. 2d 103, 108, 759 N.E.2d 899, 902 (2001). In ruling on a motion to suppress evidence, the trial court must determine the credibility of witnesses and resolve any conflict in the testimony. *People v. Koutsakis*, 272 Ill. App. 3d 159, 162, 649 N.E.2d 605, 607 (1995). Ruling on a motion to suppress evidence presents a mixed question of law and fact in which the trial court must (1) weigh the evidence and determine the facts surrounding the complained-of conduct and (2) then decide whether, as a matter of law, the facts constitute an unconstitutional seizure. *People v. Cox*, 202 Ill. 2d 462, 465-66, 782 N.E.2d 275, 278 (2002). A trial court's determination on a motion to suppress will be accorded great deference. *Koutsakis*, 272 Ill. App. 3d at 162, 649 N.E.2d at 607. However, we will employ *de novo* review for the court's ultimate ruling on a defendant's motion to suppress evidence. *Cox*, 202 Ill. 2d at 466, 782 N.E.2d at 278.

In this case, the defendant contends that Gebke did not have prob-

able cause to seize and search the box he had observed during the traffic stop. As a result, the defendant contends that the weapons located during Gebke's subsequent search of the vehicle were tainted fruit that should have been suppressed. The State responds that Gebke was entitled to ask the defendant to step out of the vehicle to discuss both the traffic stop and the box observed in his front shirt pocket incident to the traffic stop. The State contends that Gebke's plain view of the box in the defendant's front shirt pocket, coupled with that fact that his experience and training led him to believe that the box was drug paraphernalia, gave him probable cause to conclude that the vehicle contained drugs and that searches of the box and the vehicle were proper. However, the State also suggests that Gebke's examination of the box was immaterial to the ultimate discovery of the loaded gun in the defendant's vehicle, because the gun was in plain view upon the defendant's exit from the vehicle.

■ The fourth amendment to the United States Constitution guarantees people the right to be secure in their persons, houses, papers, and effects from unreasonable searches and seizures. U.S. Const., amend. IV. "When a vehicle is stopped for a minor traffic violation, a search of the vehicle is not justified." *Koutsakis*, 272 Ill. App. 3d at 163, 649 N.E.2d at 608, citing *People v. Evans*, 259 Ill. App. 3d 650, 656, 631 N.E.2d 872, 876 (1994), and *People v. Stewart*, 242 Ill. App. 3d 599, 605, 610 N.E.2d 197, 202 (1993). Because an officer's authority to investigate a traffic stop may not become a subterfuge to obtain other evidence merely based on the officer's suspicion (*Koutsakis*, 272 Ill. App. 3d at 164, 649 N.E.2d at 609), reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *Thomas*, 198 Ill. 2d at 108, 759 N.E.2d at 902. However, a warrantless search of a vehicle or a seizure of its contents may be made when the police have probable cause to believe that the vehicle contains contraband. *People v. Penny*, 188 Ill. App. 3d 499, 502, 544 N.E.2d 1015, 1016 (1989). Police suspicion or curiosity is not enough to justify a search. *Penny*, 188 Ill. App. 3d at 502, 544 N.E.2d at 1017.

■ The plain view doctrine permits a police officer, who has probable cause to suspect that an item is connected with criminal activity and whose access to the item is proper under the fourth amendment, to seize the item if it is visible. *People v. Berry*, 314 Ill. App. 3d 1, 8, 731 N.E.2d 853, 860 (2000). In order for evidence to qualify for the plain view exception to the warrant requirement, it is necessary that (1) the initial intrusion which afforded the authorities the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent. *Berry*, 314 Ill. App. 3d at 8, 731 N.E.2d at 860.

The defendant maintains that *People v. Penny*, 188 Ill. App. 3d 499, 544 N.E.2d 1015 (1989), and *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872 (1994), support the suppression of the evidence in this case. In *Penny*, the defendant filed a motion to suppress evidence seized at the time of his arrest, consisting of a package wrapped in brown opaque plastic seen lying on the floor of the defendant's vehicle by police. The trial court granted the defendant's motion to suppress, and the appellate court affirmed.

Testimony from the suppression hearing established that the defendant's vehicle had been stopped by police for having an expired license plate sticker. After pulling over to the side of the road, the defendant exited his vehicle and walked toward the rear, where he met police officers approaching him. An officer noticed that the defendant's hands were shaking as he retrieved his license. Another officer looked inside the defendant's vehicle and observed on the floor a package approximately seven inches in diameter and four inches thick wrapped in brown opaque plastic material. The defendant claimed that he did not know what was inside the package. The officer retrieved the package because he believed it looked like a kilo of cocaine. He further testified that it felt like a "brick." The officer poked a hole in the package and saw that it contained a white powder later determined to be cocaine.

The appellate court affirmed the trial court's suppression of the package. *Penny*, 188 Ill. App. 3d at 505, 544 N.E.2d at 1019. In so doing, the court found it significant that the only reasons offered by the police to support the search of the package were that it looked like a kilo of cocaine and that the defendant's hands were shaking. *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017. Noting that cocaine comes packaged in a variety of ways, the court emphasized that there was nothing about the package itself or about the surrounding circumstances that suggested it contained contraband and that it could have contained many legitimate items. *Penny*, 188 Ill. App. 3d at 503, 544 N.E.2d at 1017.

The facts and issues in *Evans* are strikingly similar to the instant case. *People v. Evans*, 259 Ill. App. 3d 650, 631 N.E.2d 872 (1994). The defendant in *Evans* moved to suppress a small wooden box and cannabis seized by the police during a routine traffic stop. The trial court denied the motion to suppress, and the appellate court reversed.

Testimony from the suppression hearing in *Evans* established that the *Evans* defendant had been stopped by police for speeding. The defendant testified that the officer approached the defendant's vehicle and asked for his driver's license. The defendant tendered his license, and the officer returned to his squad car for about five minutes while

the defendant remained in his car. The officer returned to the defendant's vehicle, issued him a citation, and then asked the defendant what was inside his front shirt pocket. The defendant did not respond. Similar to the testimony in the case *sub judice*, the defendant testified that the officer pulled a small box from his shirt pocket, while the officer testified that the defendant offered the box voluntarily. The description of the box in *Evans* is similar to the description of the box at issue in this case.

The officer opened the box and observed what he thought was cannabis. He instructed the defendant to exit his vehicle, placed him in handcuffs, and informed him that he would conduct a search of the vehicle. He asked the defendant if he had any more cannabis in the vehicle, and the defendant responded in the affirmative. The officer located three small bags of cannabis inside a duffel bag located in the defendant's vehicle. The officer testified that he came into contact with similar boxes during his training in drug enforcement and in more than 50 similar situations. The officer testified that in each of those situations the boxes did not contain tobacco. Like Gebke in the instant case, the officer in *Evans* testified that he was responding only to the traffic violation when he stopped the defendant's vehicle, that he did not observe anything unusual about the interior of the defendant's vehicle upon his approach, and that there was no writing on the outside of the box.

The trial court denied the defendant's motion to suppress, and the appellate court reversed. *Evans*, 259 Ill. App. 3d at 659, 631 N.E.2d at 878. Relying primarily on *Penny*, the *Evans* court concluded that the officer had lacked probable cause to search the box and that the evidence related to the box should have been suppressed. *Evans*, 259 Ill. App. 3d at 658, 631 N.E.2d at 878. The court stated, "The container was not one of those rare 'single-purpose' containers which by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance and the containers can reasonably have no legitimate purpose other than the concealment of contraband." *Evans*, 259 Ill. App. 3d at 655, 631 N.E.2d at 876. The court further concluded that the bags of cannabis located in the duffel bag during the subsequent search of the defendant's vehicle should have been suppressed because it was the tainted fruit of an unlawful arrest. *Evans*, 259 Ill. App. 3d at 659, 631 N.E.2d at 878. The court reasoned that since the arrest was effected on the basis of evidence impermissibly obtained from the search of the box, the arrest was unlawful and could not support a further search of the vehicle incident to arrest. *Evans*, 259 Ill. App. 3d at 658-59, 631 N.E.2d at 878.

In so holding, the *Evans* court found it significant that the officer had no reason to believe that he was dealing with anything more than a routine traffic stop or that the vehicle contained contraband. *Evans*, 259 Ill. App. 3d at 656, 631 N.E.2d at 876. Further, the State did not argue that the officer intended to make a limited *Terry* search (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) for weapons out of concern for his safety. *Evans*, 259 Ill. App. 3d at 656, 631 N.E.2d at 876. The officer conceded that he did not believe the box contained a weapon, and he did not express any concern for his safety. *Evans*, 259 Ill. App. 3d at 656, 631 N.E.2d at 876. The fact that no other suspicious or incriminating circumstances were present at the time the officer either requested the box or (according to the defendant) took the box from the defendant's pocket was highly significant to the *Evans* court. *Evans*, 259 Ill. App. 3d at 656, 631 N.E.2d at 876.

Additionally, in rejecting the State's claim that the officer's experience or suspicion could serve as the basis for probable cause to seize and search the box, the *Evans* court noted the absence of additional incriminating circumstances and the possibility that the box could have contained lawful objects such as tobacco or thumbtacks. *Evans*, 259 Ill. App. 3d at 657, 631 N.E.2d at 877.

The State contends that the decision in *Evans* misinterprets and contradicts the Illinois Supreme Court's prior decision in *People v. Smith*, 95 Ill. 2d 412, 447 N.E.2d 809 (1983). The issue before the court in *Smith* was whether the sheriff's warrantless search of a small box in the defendant's vehicle violated the state and federal warrant requirements.

In *Smith*, the sheriff stopped the defendant's vehicle for an expired safety-inspection sticker. The defendant exited his vehicle and met the sheriff halfway between his vehicle and the squad car. The sheriff detected an odor of alcohol on the defendant, approached the defendant's vehicle on the driver's side, and observed an open bottle in a brown paper bag on the floor of the passenger compartment. The sheriff noticed that the bottle contained liquid, and he believed that it was a beer bottle, based on its shape and the color of the label. The sheriff also observed on the floor of the driver's side a small, three-inch by five-inch wooden box with a sliding top. The sheriff recognized the box as a "one-hitter box" used to carry cannabis. The sheriff entered through the passenger side of the vehicle and began to search without the defendant's consent or a warrant to do so. During his search, he observed a hypodermic syringe next to the box on the floor of the vehicle. He seized the bottle, the syringe, and the box. The sheriff opened that box and discovered what he thought was cannabis, a metal pipe, and a plastic bag containing a white powder that he thought was cocaine, at which time he arrested the defendant.

Relying primarily on *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), the *Smith* court found that the sheriff's search of the box was permissible under the automobile exception to the warrant requirement, and it reversed the appellate court. The court noted, " 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' " *Smith*, 95 Ill. 2d at 418, 447 N.E.2d at 811, quoting *Ross*, 456 U.S. at 825, 72 L. Ed. 2d at 594, 102 S. Ct. at 2173. The court further observed that the nature of the container in which contraband is secreted does not determine the permissible scope of a warrantless search under the automobile exception. *Smith*, 95 Ill. 2d at 418, 447 N.E.2d at 811, citing *Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157.

The unique circumstances leading up to the sheriff's search of the vehicle were significant to the court in finding that the sheriff had probable cause to search the entire vehicle. The court noted that the sheriff was entitled to enter the vehicle to inspect the bottle and to search for alcohol upon perceiving alcohol on the defendant's breath and viewing an open beer bottle on the floor of the vehicle. *Smith*, 95 Ill. 2d at 419, 447 N.E.2d at 812. Also, having found the hypodermic syringe and the box, the sheriff had probable cause to search the entire vehicle and any closed containers therein for drugs. *Smith*, 95 Ill. 2d at 420, 447 N.E.2d at 812.

*Smith* was decided before *Evans*. However, the court in *Evans* distinguished the holding in *Smith* and found it inapplicable. *Evans* found it had been the "other indices of unlawful activity or contraband" confronting the officers in *Smith*, plus their observation of the box, that supported probable cause to search. *Evans*, 259 Ill. App. 3d at 658, 631 N.E.2d at 877. The *Evans* court further noted that the supreme court in *Smith* did not specifically hold that the box was so unique or distinctive that the observation of it alone supported probable cause to search under the single-purpose-container doctrine. *Evans*, 259 Ill. App. 3d at 658, 631 N.E.2d at 877-78.

In this case, the State asks us to find that the holding in *Smith* supports a finding that Gebke had probable cause to search the contents of the box in the defendant's possession as well as the remainder of the vehicle. In making this request, the State further asks that we reject the holding in *Evans*, particularly its treatment of *Smith*. We decline. The distinction is clear between the relevant circumstances considered *in toto* by the *Smith* court in holding that probable cause existed and those considered by the *Evans* court in holding that probable cause did not exist. *Smith* simply involved more facts that would support a reasonable person's belief that contraband

was in the vehicle. Further, the facts in *Smith* do not parallel those in the instant case.

■ The standard by which probable cause is determined requires that the totality of the facts and circumstances known to police at the time of the search would justify a reasonable person in believing that contraband was present in the vehicle. *Smith*, 95 Ill. 2d at 419, 447 N.E.2d at 811-12, relying on *People v. Clark*, 92 Ill. 2d 96, 100, 440 N.E.2d 869, 871 (1982). While an officer's experience is a relevant factor to consider, along with the totality of the circumstances in each case (*People v. Jackson*, 331 Ill. App. 3d 158, 164, 772 N.E.2d 275, 281 (2002)), it is but one circumstance to consider and is not, in and of itself, dispositive. Furthermore, police suspicion or curiosity does not support a finding of probable cause. *Penny*, 188 Ill. App. 3d at 502, 544 N.E.2d at 1017.

■ With these considerations in mind, we find that the circumstances involved here do not show that Gebke had probable cause to search either the box observed in the defendant's front shirt pocket or the remainder of the vehicle's contents. The only reason offered by Gebke justifying his search of the box was Gebke's conclusion that the box was "drug paraphernalia" based upon his training and work experience. However, Gebke testified that this was only a suspicion that was confirmed after he had opened the box. Further, Gebke conceded that the box could contain a variety of nonillicit items and that it did not have only one purpose. There was no testimony showing that the box itself or the circumstances surrounding Gebke's view of it suggested that it contained contraband. Gebke believed that he was conducting a routine traffic stop. Gebke did not believe that the defendant's vehicle contained contraband at the time of the stop, nor did he suspect the defendant of committing any other crime other than having inoperable taillights. Gebke had no reason to search the vehicle or to ask the defendant to step outside. In fact, the sole reason offered by Gebke for his search of the box was his belief that such boxes contain contraband based upon his training and work experience. This alone does not establish probable cause.

■ We next address the trial court's belief that it made a mistake in initially suppressing the box and its contents, on the basis that the *Penny* and *Evans* decisions predated section 3.5 of the Act (720 ILCS 600/3.5 (West 2000)). While the trial court was correct that *Penny* and *Evans* predated section 3.5, which became effective on December 15, 1994, we fail to recognize how this or any other section of the Act affects the probable cause determination. Section 3.5 of the Act provides for the sentencing of individuals found guilty of possession of drug paraphernalia. Contrary to the apparent belief of the trial court, sec-

tion 3.5 does not define the phrase "drug paraphernalia." In fact, the definition of "drug paraphernalia" is found in section 2 of the Act (720 ILCS 600/2 (West 2000)). Nothing remotely similar to the box involved in this case is listed in this section. Furthermore, the *Penny* and *Evans* decisions did not predate the legislature's enactment of section 2. Although it is arguable that the box found in the defendant's possession could qualify under section 2 as "drug paraphernalia," so, too, could many other items that are not solely dedicated to that use, *e.g.*, plastic camera film containers and duffel bags. In short, we do not find that any section of the Act adds to a probable cause analysis.

■ Last, we address the State's contention that the guns seized from the defendant's vehicle should not be suppressed even if the search of the box was illegal. It is well settled that evidence discovered by the exploitation of illegal police conduct must be excluded as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417 (1963). However, under the inevitable discovery doctrine, evidence obtained in violation of a defendant's constitutional rights may avoid exclusion if the State is able to prove that such evidence inevitably would have been discovered without the illegal police conduct. See *People v. Burnidge*, 178 Ill. 2d 429, 441, 687 N.E.2d 813, 818-19 (1997) (Freeman, C.J., specially concurring, joined by Bilandic, J.).

The State contends that even if Gebke's search of the box was improper, the gun Gebke observed on the front seat should not be suppressed because it was in plain view upon the defendant's exit of the vehicle. The State further claims that since Gebke was entitled to ask the defendant to exit his vehicle for no reason at all, Gebke's discovery of the gun in the front seat was inevitable. We disagree.

As we have already established, Gebke's search of the box found in the defendant's possession was not supported by probable cause. Despite the State's contentions, Gebke's own testimony indicates that he asked the defendant to exit his vehicle *only* after he "confirmed his suspicions" that the box contained contraband. His reason for asking the defendant to exit the vehicle was to secure him with handcuffs—not to complete the routine traffic stop. The fact that Gebke *could have* asked the defendant to exit his vehicle, thereby discovering the gun in plain view, does not show that such was *inevitable*. Based upon the record, it seems much more likely that had Gebke not searched the box and discovered its illicit contents, he would have issued the defendant a citation and sent him on his way, without having ever had him exit the vehicle. The State has not demonstrated beyond a preponderance of the evidence that Gebke's discovery of either or both of the weapons observed in the defendant's vehicle would have been

inevitable. There being no valid exception to the exclusionary rule, the weapons and related evidence should have been suppressed pursuant to the "fruit of the poisonous tree" doctrine. The trial court erred in not suppressing this evidence.

## III. CONCLUSION

After reviewing the entire record *de novo*, we find that the trial court's denials of the defendant's motions to suppress were against the manifest weight of the evidence. Accordingly, the order denying the suppression of the evidence is reversed. Furthermore, because the defendant was convicted solely upon the evidence adduced at the suppression hearing, the very same evidence sought to be excluded by the defendant's motions to suppress, we also reverse the defendant's conviction and sentence.

Reversed.

HOPKINS, P.J., and MAAG, J., concur.