(No. 56382.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICHARD E. SMITH, Appellee.

*Opinion filed March 25, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield, and Bruce W. Black, State's Attorney, of Pekin (Michael B. Weinstein and Ronald Lee Bell, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gni-

dovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Verlin R. F. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The issue here is whether a deputy sheriff's warrantless search of a small closed box found in the defendant's motor vehicle violated the warrant requirements of the State (Ill. Const. 1970, art. I, sec. 6) and Federal (U.S. Const., amends. IV, XIV) constitutions. The sheriff found cocaine and cannabis inside the box, and the defendant, Richard E. Smith, was charged with unlawful possession of a controlled substance (cocaine) and unlawful possession of cannabis (Ill. Rev. Stat. 1979, ch. 56½, pars. 704, 1402(b)). The circuit court of Tazewell County denied the defendant's motion to suppress the evidence discovered in the search. A jury found the defendant guilty of both charges, but on the State's motion the circuit court entered judgment only on the controlled-substance charge and sentenced the defendant to three years' imprisonment. The appellate court reversed Smith's conviction, concluding that the deputy sheriff's warrantless search of the closed box violated the fourth amendment's warrant requirement. (103 Ill. App. 3d 430.) We granted the State's petition for leave to appeal.

To dispose of this appeal we need only review the facts relating to the stop and search of the defendant's motor vehicle on the afternoon of June 4, 1980. A Tazewell County deputy sheriff testified that he stopped Smith's truck because it had an expired safety-inspection sticker. Smith met the officer half way between his vehicle and the officer's squad car. The officer asked for Smith's driver's license, examined it, and then gave it to

another officer in the squad car to run a license check.

Smelling alcohol on Smith's breath, the officer approached the window in the door on the driver's side of the truck, and observed an open bottle in a brown paper bag on the floor of the passenger compartment. The bottle's neck was exposed and the officer could observe that it contained liquid. Judging from the shape of the bottle and color of the label on the neck, the officer was nearly certain that it was a bottle of Miller's beer. The officer also observed a small three- by five-inch wooden box with a sliding top which was lying on the floor of the driver's side underneath the steering wheel. He recognized it as what was popularly referred to as a "one-hitter box," a type of box often used to carry cannabis.

With neither a warrant nor the defendant's consent to a search the officer moved to the passenger side and entered the vehicle. During the subsequent search of the vehicle's interior the defendant remained standing outside on the driver's side. Upon entering the passenger's side, the officer observed a hypodermic syringe lying on the floor of the driver's side next to the "one-hitter box." He placed the cap on the bottle and seized the bottle, the box and the syringe. Opening the box the officer found cannabis, a metal pipe, and a plastic bag containing a white powdery substance which laboratory examinations later identified as cocaine. The officer then placed the defendant under arrest for the absence of a valid safety-inspection sticker; the unlawful opening of alcoholic beverages in a motor vehicle; the possession of a controlled substance; the possession of cannabis; and the possession of a hypodermic syringe.

The State claims that the officer's warrantless search of the box was lawfully conducted both as a search incident to an arrest (*New York v. Belton* (1981), 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860) and as a valid search under the automobile exception to the warrant re-

quirement (*United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157; *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280). Because we hold that the search was permissible under the automobile exception we need not consider whether it might also have been permissible as a search incident to arrest.

In holding that the search violated the fourth amendment the appellate court relied heavily on the plurality opinion in *Robbins v. California* (1981), 453 U.S. 420, 69 L. Ed. 2d 744, 101 S. Ct. 2841. In that case six justices concurred in the court's judgment that the police should not have opened two packages wrapped in green opaque plastic without a warrant even though the packages were found during a lawful warrantless search under the automobile exception. The plurality opinion observed that the police may conduct a warrantless search of a closed container found in a search under the automobile exception only if the container so clearly announces its contents "whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer." 453 U.S. 420, 428, 69 L. Ed. 2d 744, 752, 101 S. Ct. 2841, 2847 (opinion of Stewart, Brennan, White & Marshall, JJ.).

Applying the plurality standard in *Robbins* to the present case, the appellate court held that the wooden "one-hitter box" was not sufficiently distinctive in appearance to make its contents obvious to the ordinary person. Although law-enforcement officers knew that this type of box was often used for the transportation of cannabis according to the appellate court, their "subjective knowledge, while relevant, is not conclusive. Rather, the container must be evaluated to determine whether society as a whole would recognize it as one commonly used to carry a controlled substance." 103 Ill. App. 3d 430, 433.

Shortly after the appellate court's decision in this case, the Supreme Court expressly rejected the precise holding in *Robbins* and repudiated the approach of the plurality opinion in that case. In *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, the court held that the nature of the container in which contraband is secreted does not determine the permissible scope of a warrantless search under the automobile exception:

> "We hold that the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (456 U.S. 798, 825, 72 L. Ed. 2d 572, 594, 102 S. Ct. 2157, 2172.)

Thus, under *Ross* an officer who lawfully stops a vehicle and who has probable cause to believe that the vehicle is carrying contraband may lawfully search the vehicle and any closed containers in the vehicle that might reasonably contain the object of the search.

The defendant argues that the permission granted by the court in *Ross* does not apply in this case because the officer's probable cause to search the vehicle focused on the box and not on the entire vehicle. He observes that *Ross* did not overrule either *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, in which the court held invalid the warrantless search of a suitcase found in the trunk of a taxi or *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, in which the court held invalid the search of a footlocker found in a trunk of an automobile. Instead, *Ross* distinguished *Sanders* and *Chadwick* as cases in which the police only had probable cause to search the closed containers in the vehicles and not the entire vehicle. (456 U.S. 798, 813-14, 72 L. Ed. 2d 572, 587, 102 S. Ct. 2157, 2167.) In

*Chadwick* the police had probable cause to search the footlocker based upon the prior observations of law-enforcement officers. In *Sanders* the police had probable cause to search the suitcase based upon the tip of a reliable informer that was provided before the suitcase was loaded into the automobile. The police in neither case had any reason to search the balance of the transporting vehicles. As interpreted by *Ross, Chadwick* and *Sanders* only prohibit warrantless searches of containers found in automobiles when the police officers conducting the search have no probable cause to search the entire vehicle for contraband and are thus not operating under the automobile exception.

"To establish probable cause to search it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that contraband was present in the automobile. [Citations.]" (*People v. Clark* (1982), 92 Ill. 2d 96, 100.) The uncontroverted testimony of the deputy sheriff supports the circuit court's determination that the officer had probable cause to search the vehicle for contraband.

The officer stopped the defendant's vehicle because it lacked a valid safety-inspection sticker. Nothing in the record indicates that the safety-sticker violation was a pretext for an unlawful search of the defendant's vehicle. The officer smelled alcohol on the defendant's breath, and peering through the window on the driver's side of the vehicle the officer could see an open bottle. The shape of the bottle and the color of the label made the officer virtually certain that it was a bottle of Miller's beer. With this information alone it was reasonable for the officer to enter the passenger compartment of the defendant's vehicle in order to inspect the bottle and search for alcohol.

By the time the officer seized the box he also had probable cause to search the entire vehicle for drugs. In determining whether the officer had probable cause, his factual

knowledge, based on law-enforcement experience, is relevant. (*Cf. United States v. Cortez* (1981), 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (articulable suspicions justifying stop of vehicle by officers of border patrol); *People v. Smith* (1978), 67 Ill. App. 3d 952 (probable cause where officer smelled odor that he knew from experience to be the odor of marijuana).) Before entering the vehicle the officer observed the small wooden box with a sliding top. Based on his own knowledge and experience with such containers, the officer recognized it as a "one-hitter box" commonly used to carry cannabis. Moreover, upon entering the vehicle the officer also immediately observed a hypodermic syringe lying on the floor next to the "one-hitter box."

Finding the hypodermic syringe and the "one-hitter box" gave the officer probable cause to believe that the vehicle contained drugs. Thus, under *Ross* the officer could search the vehicle and any closed containers carried in it that might hold drugs or drug-related paraphernalia. The fact that the officer chose to search first in the most obvious location does not invalidate the search. As the Supreme Court observed in *Ross*:

> "[P]rohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained." (456 U.S. 798, 821 n.28, 72 L. Ed. 2d 572, 591-92 n.28, 102 S. Ct. 2157, 2171 n.28.)

Thus, we hold that the officer's search of the "one-hitter box" was permissible under the automobile exception to the warrant requirement as elaborated by the Supreme Court in *Ross*.

Because the search involved in this case occurred before

the Supreme Court decided *Ross*, the defendant argues that we should not apply the *Ross* standard to his case. In *United States v. Johnson* (1982), 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579, the Supreme Court recently held that decisions adopting new interpretations of the fourth amendment are to be applied retrospectively to all cases not yet final at the time the decision was rendered.

Although *Johnson* involved an expansion of fourth amendment protection for criminal defendants, many of the same arguments that supported retrospective application in that case are similarly applicable here. Retrospective application of *Ross* "would further the goal of treating similarly situated defendants similarly." (457 U.S. 537, 555, 73 L. Ed. 2d 202, 217, 102 S. Ct. 2579, 2590.) It would also "comport with our judicial responsibilities 'to do justice to each litigant on the merits of his own case' [*Desist v. United States* (1969), 394 U.S. 244, 259, 22 L. Ed. 2d 248, 261, 89 S. Ct. 1030, 1039 (Harlan, J., dissenting)], and 'to resolve all cases before us on direct review in light of our best understanding of governing constitutional principles.' [*Mackey v. United States* (1971), 401 U.S. 667, 679, 28 L. Ed. 2d 404, 413, 91 S. Ct. 1160, 1173 (separate opinion of Harlan, J.).]" 457 U.S. 537, 555, 73 L. Ed. 2d 202, 217, 102 S. Ct. 2579, 2590.

In any case, retrospective application of *Ross* would also comport with the pre-*Johnson* balancing test for determining whether a new constitutional decision should be applied retrospectively. (See, *e.g.*, *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; see also *United States v. Johnson* (1982), 457 U.S. 537, 543-54, 73 L. Ed. 2d 202, 209-16, 102 S. Ct. 2579, 2584-90.) In *Ross* the court observed:

> "[A]lthough we reject the precise holding in *Robbins*, there was no Court opinion supporting a single rationale for its judgment and \*\*\* we are convinced that the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with

substantial consistency throughout our history." (456 U.S. 798, 824, 72 L. Ed. 2d 572, 593, 102 S. Ct. 2157, 2172.)

In addition, no legitimate reliance interests could be affected by the court's application of the *Ross* standard in this case: "Any interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate." (456 U.S. 798, 824 n.33, 72 L. Ed. 2d 572, 593 n.33, 102 S. Ct. 2157, 2172 n.33.) This court and other courts have already applied *Ross* retrospectively to cases on direct appeal, and we see no reason for refusing to do so in this case. See, *e.g., People v. Clark* (1982), 92 Ill. 2d 96, 100; *United States v. Floyd* (5th Cir. 1982), 681 F.2d 265, 266; *United States v. Groth* (6th Cir. 1982), 682 F.2d 578, 580.

The defendant also argues that the warrant requirement in the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6) affords Illinois criminal defendants greater protection against searches of containers carried in automobiles than the protection afforded by the Supreme Court's interpretation of the fourth amendment in *Ross*. In interpreting the warrant requirement of our State constitution and applying the exclusionary rule we must carefully balance the legitimate aims of law enforcement against the interest of all our citizens in preventing unreasonable intrusions on their privacy. We believe that the Supreme Court's interpretation of the automobile exception, announced in *Ross*, achieves a fair balance between these competing objectives, and we see no reason at this time to adopt a different standard in applying Illinois constitutional provisions.

The judgment of the appellate court is reversed and the judgment of the circuit court of Tazewell County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*