THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWIN WARD, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0132

Opinion filed October 24, 1990.

Joseph J. Cavanaugh and Daniel P. Soso, both of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E.
Fitzgerald, and David B. Franks, Assistant State's Attorneys, of counsel,
and Michael Brychel, Law Student), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Edwin Ward, was charged by information with possession of a controlled substance, to wit, cocaine, with intent to deliver. (Ill. Rev. Stat. 1985, ch. 56½, par. 1402.) Defendant was convicted, sentenced to eight years' imprisonment and fined $6,000 after a bench trial. Defendant appeals only the denial of his pretrial motion to suppress evidence and quash his arrest.

The conflicting evidence adduced at the suppression hearing revealed the following. On December 16, 1986, defendant was walking through Terminal 2 at O'Hare Airport after arriving from Tucson, Arizona, where he resided. Defendant's travelling companion, Paula Gullick, went off in search of a writing instrument to write down the name of a hotel. Shortly thereafter, Paula was detained by two Chicago police officers in plainclothes, Prusank and Molitor, who, after observing her movements for some time and suspecting her of being a prostitute, either asked her if she needed any help or told her she was under arrest for prostitution. While the officers were speaking with Paula, defendant approached the three and either said, "What seems to be the problem?" or "What the f--- are you doing with my girlfriend?" In response, the officers either identified themselves as such and explained that they were questioning Paula about her activities at the airport or said, "Who the hell are you?" or "Who the f--- are you?" Thereafter, defendant either informed the officers that he was a friend of Paula and again requested some identification from them or became belligerent and argumentative and told the officers, "Leave her alone, she hasn't done anything." Thereafter, defendant either asked Paula if she was all right and was told by the officers, "What is to you, punk?" or was asked by the officers for some identification. Thereafter, defendant either was grabbed by the officers, knocked to the ground and handcuffed or put his hands in his pockets, apparently to retrieve some identification therefrom. Either as a result of a search of his person after he was being handcuffed or of his attempt to produce some identification, a closed, brown glass vial fell to the floor. The police officers opened the vial and found a white substance they suspected of being cocaine after either observing its contents from the outside or being unable to do so. At any rate, the officers then placed defendant under arrest.

After retrieving two locked pieces of luggage which defendant had been carrying, the police transported defendant to the airport police facility. According to defendant's evidence, when he, Paula and the officers arrived at the facility, the officers slammed his head into a podium, causing a substantial cut on his right cheek. Eventually, the

officers asked defendant for permission to open the locked luggage, which defendant either gave or did not give the officers. At any rate, after breaking the luggage open, the officers found a bag containing a white powder which was later discovered to be 461 grams of cocaine and a bag containing 235 white pills later discovered to be Valium.

## I

On appeal, defendant first contends that the denial of the motion to suppress evidence and quash arrest was error because the State failed to demonstrate that the police request for identification from him was supported by reasonable and articulable suspicion that he was engaged in criminal activity.

We disagree. Rather than the case law cited by defendant, which by and large is the progeny of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, we believe that the case law cited by the State, which stems from *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319, is controlling on this issue.

■ *Royer* held that no fourth amendment seizure of an airline passenger occurs where the police approach him in a public area, announce their office, ask if he is willing to answer some questions, put some questions to him, and the person remains free to disregard the questions and walk away. Applying *Royer* and the objective test approved therein for determining whether a fourth amendment seizure of a person has occurred (see *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870), the court in *People v. Forrest* (1988), 172 Ill. App. 3d 385, 526 N.E.2d 616, held that there was no fourth amendment seizure of the defendant where the police had initially approached the defendant in a public area of Midway Airport, the defendant consented to the conversation, the police told him he was free to go, the defendant understood that he was free to leave and, in fact, did leave.

■ In the case *sub judice*, defendant approached the police in a public area of O'Hare Airport when he saw them speaking with Paula. While defendant claimed that the police failed to identify their office, they claimed that they had done so in response to an inquiry by defendant.[1] Admittedly, in contrast to the situations in *Royer* and *Forrest*, the police neither asked defendant if he was willing to answer some questions before asking him for some identification nor in-

---

[1] The question of credibility on this issue, like all the issues upon which defendant's and the State's evidence conflicted, was properly for the trial court. We cannot substitute our judgment for the trial court's judgment on that issue.

formed him that he was free to go without answering any questions. Additionally, it is not apparent from the record whether defendant here, like the defendants in those cases, understood that he was free to go without answering the police officers' questions. These dissimilarities with *Royer* and *Forrest* notwithstanding, we find the fact that the defendant approached the police to inquire about their business with Paula tantamount to the consent to the questioning by the police implicitly relied upon in *Royer* and explicitly relied upon in *Forrest.* In another context, it is well established that a defendant's making volunteered statements to the police does not invoke his constitutional rights to remain silent and to have the assistance of counsel. (*Miranda v. Arizona* (1966), 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.) We believe that the rationale underlying that rule, *i.e.,* the lack of compulsion or coercion, applies with equal force to the facts of this case.

Moreover, the fact that defendant may not have known that the men speaking with Paula were police officers when he first approached them does not compel a contrary conclusion. Regardless of that fact, defendant knew, according to his own and the State's evidence, that the men surrounding Paula were police officers, at the latest, *before* they asked him for some identification. As such and given the circumstances surrounding that request, we believe defendant's acquiescence thereto was completely voluntary rather than coerced in some official way.

## II

Defendant next contends that the warrantless search of the brown vial which fell out of his pocket when he attempted to produce the requested identification violated his fourth amendment rights because the police did not have probable cause to believe the vial contained narcotics.

We disagree. The only Illinois case upon which defendant relies, *People v. Smith* (1982), 103 Ill. App. 3d 430, 431 N.E.2d 699, has been reversed by our supreme court.

In *Smith,* a police officer stopped the defendant's vehicle for failing to display a valid safety inspection sticker. Upon searching the vehicle, the officer found a box, which was undistinctive in appearance, commonly referred to as a "one hitter box" and which law enforcement officials apparently knew to be commonly used to carry marijuana. Upon removing it from the vehicle, the officer opened the box and found that it contained a quantity of marijuana. In holding that the warrantless search of the box violated the fourth amendment, the

appellate court, after reviewing relevant U.S. Supreme Court cases, held that, "[i]f a container, otherwise undistinctive in appearance, is known to some segments of society to be used for certain purposes, its contents should remain fully protected by the fourth amendment, if it is closed and opaque, not subjecting its contents to public view." (103 Ill. App. 3d at 433.) Additionally, the court found the apparent knowledge of law enforcement officials of the common use of the box to transport marijuana, while relevant, not conclusive. Instead, the court held that a container must be evaluated to determine whether society as a whole would recognize it as one commonly used to carry a controlled substance. The court reasoned that it could not be automatically concluded that marijuana was contained within that wooden box because "[i]ts shape did not imply its contents, nor was it in any way transparent or open, subjecting its contents to public view." *Smith*, 103 Ill. App. 3d at 433.

The supreme court reversed the appellate court's judgment in *Smith* on the basis of the automobile exception to the fourth amendment, which allows the warrantless search of both automobiles and containers found therein based on the existence of probable cause to search the vehicle. (*People v. Smith* (1983), 95 Ill. 2d 412, 447 N.E.2d 809.) Being so informed by the State, defendant, in his reply brief, attempts to distinguish *Smith* on the ground that the automobile exception to the fourth amendment is not involved or applicable in this case. In so doing, defendant ignores what the court stated, in part, with regard to the issue of probable cause to search defendant's vehicle:

> "In determining whether the officer had probable cause, his factual knowledge, based on law-enforcement experience, is relevant. [Citations.] Before entering the vehicle the officer observed the small wooden box with a sliding top. Based on his own knowledge and experience with such containers, the officer recognized it as a 'one-hitter box' commonly used to carry cannabis." *Smith*, 95 Ill. 2d at 419-20.

The foregoing rationale is as applicable to a determination of probable cause to search a closed container inadvertently produced by a defendant in an airport as it is to a determination of probable cause to search a closed container observed in an automobile. As *Smith* notes, in determining whether the police officers here had probable cause to search the vial which defendant dropped from his pocket while producing the identification requested by them, their factual knowledge, based on law enforcement experience, is relevant. In this case, the testimony of Officer Prusank conclusively established that,

based on his law enforcement experience, he knew that the type of vial defendant dropped from his pocket was commonly used to carry narcotics. Thus, the existence of probable cause to have searched, *i.e.*, opened, the vial cannot be gainsaid.

## III

█ Defendant next contends that the State failed to prove that he voluntarily consented to the search of his luggage after he was placed under arrest or that the search of his luggage was a valid inventory search and that, as such, the search of the luggage was an unreasonable search and seizure under the fourth amendment. We disagree.

With regard to the issue whether he consented to the search of his locked luggage, defendant ignores that its resolution rested entirely upon the trial court's determination of the credibility of the State's and defense witnesses. Defendant cites various facts, inconsistencies and shortcomings in that testimony supporting a conclusion that he did not consent to the search of his luggage. However, we do not believe that those facts, inconsistencies or shortcomings compel a conclusion that the trial court's resolution of the consent issue was manifestly erroneous.

In addition to his denial of having consented to the search of his luggage and the police officers' inability to recall which of them asked therefor and which opened the luggage, defendant also notes that he was subjected to physical punishment upon arriving at the police station, that the police did not obtain his written consent, that the police broke the locks on his luggage, that he was in custody for about 30 minutes before the police requested his consent, and that the police never advised him that he had the right to refuse his consent to their search.

With respect to the physical punishment allegedly inflicted upon defendant, the short answer to his reliance thereon is that the trial court disbelieved that assertion. The record does not so conclusively establish that that punishment was inflicted upon defendant that we can find the trial court's resolution of this issue manifestly erroneous. Defendant cites the testimony of Officer Prusank that his arrest photograph, admitted into evidence but not contained in the record on appeal, revealed "a mark" on defendant's face and that the trial court observed a scar on defendant's face. However, tending equally, if not more heavily, to disprove the alleged physical violence was the evidence, to which defendant stipulated, that no injuries were found on him upon his admission to the Cook County

Department of Corrections and his admission at trial that he did not complain of any injuries to his face to any Department of Corrections personnel.

With respect to the police failure to obtain written consent to the search and to advise defendant that he could refuse his consent, the short answer to defendant's reliance thereon is that neither is required as a matter of law before a search may be held valid. The latter failure is a relevant factor in determining the voluntariness of consent to search. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 464 N.E.2d 1206.) However, under the circumstances of this case, we cannot say that that failure, whether alone or together with the other facts, inconsistencies or shortcomings relied upon by defendant, reveals that the trial court's finding that defendant consented to the search of his luggage was manifestly erroneous.

Additionally, in view of the police officers' testimony that defendant stated that he did not have any keys to the luggage and that they asked him if they could break the locks, the fact that they did just that is also unavailing to defendant.

In view of our conclusion that the trial court's determination that defendant had consented to the search of his luggage is not manifestly erroneous, we need not decide whether the search was justifiable as an administrative inventory procedure.

IV

For all the foregoing reasons, the trial court's order denying defendant's motion to quash arrest and suppress evidence is affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.