Docket No. 97683–Agenda 3–March 2005.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CARLOS JONES, Appellee.

Opinion filed May 19, 2005.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Carlos Jones, was charged in the circuit court of St. Clair County with one count of aggravated unlawful use of a weapon. 720 ILCS 5/24–1.6(a)(1), (a)(3)(A) (West 2000). The circuit court denied defendant’s motion to suppress evidence. Following a stipulated bench trial, defendant was convicted as charged. The appellate court reversed defendant’s conviction, holding that the circuit court erred in denying defendant’s motion to suppress. 344 Ill. App. 3d 413. We allowed the State’s petition for leave to appeal (177 Ill. 2d R. 315(a)), and now reverse the judgment of the appellate court.

BACKGROUND

The record contains the following pertinent facts. Defendant was charged with one count of aggravated unlawful use of a weapon, in that defendant knowingly carried in a vehicle a revolver when he was not on his own land, or in his own abode, or in his fixed place of business, and the revolver was uncased, loaded, and immediately accessible at the time of the offense. See 720 ILCS 5/24–1.6(a)(1), (a)(3)(A) (West 2000). Defendant filed a motion to suppress evidence. The circuit court held a suppression hearing. The only witnesses who testified were Illinois State Trooper Christopher Gebke and defendant. The hearing adduced the following testimony.

At approximately 10:35 p.m. on February 18, 2001, defendant was driving an older model pickup truck east on Route 15 in Belleville. With defendant was his son, whom the record indicates was 11-year-old Carlos Junior. On Route 15 near 59th Street, defendant drove past Gebke, who observed that defendant’s tail lights were not operating. Gebke initiated a traffic stop. He approached defendant’s vehicle and informed defendant that his tail lights were not working. Gebke asked defendant for his driver’s license, and defendant complied. According to his testimony, Gebke at this point did not suspect defendant of any crime other than having inoperable tail lights.

After defendant handed his driver’s license to Gebke, defendant’s front shirt pocket opened. Defendant had a small wooden box in the pocket. Based on his training and experience, Gebke recognized that type of box as an item of drug paraphernalia known as a “one-hitter” box, which is commonly used to carry cannabis. Gebke asked defendant what he had in his pocket and defendant replied that he had cigarettes. The testimony conflicts at this point. According to Gebke, he asked defendant for the box and defendant voluntarily handed it to Gebke. However, according to defendant, Gebke took the box from defendant’s pocket as defendant attempted to button the pocket closed.

The remaining evidence is uncontradicted. The box was approximately two inches wide, four inches tall, and less than an inch thick. Gebke opened the box and saw what he believed to be cannabis and a pipe. Gebke asked defendant to step out of the vehicle. Gebke testified that his purpose in so doing was to arrest defendant for a drug offense and to handcuff defendant. After Gebke asked defendant to step out of the vehicle, but before defendant complied, Gebke observed defendant’s right hand move. It appeared to Gebke that defendant was pushing something between the vehicle seat cushions. As soon as defendant exited the vehicle, Gebke saw the butt of a handgun protruding from the front seat cushions.

Gebke handcuffed defendant, seized the handgun, which was a loaded .22-caliber revolver, and placed defendant in the squad car. Gebke returned to defendant’s vehicle, where he encountered defendant’s son crying. Gebke asked defendant’s son if he would like to sit in the squad car with his father, and the son said yes. When defendant’s son was secured, Gebke searched defendant’s vehicle. Behind the rear seat, Gebke found a small bag containing a loaded .38-caliber revolver with 22 additional bullets. Gebke described this search both as a search incident to arrest and an inventory search, as he planned to have the vehicle towed.

On January 2, 2002, the circuit court entered a written order granting defendant’s motion in part and denying it in part. The circuit court suppressed the box and its contents based on 
People v. Evans
, 259 Ill. App. 3d 650 (1994). The court in 
Evans
 described a single-purpose container as a container that by its nature cannot support a reasonable expectation of privacy because its contents can be inferred from its outward appearance and the container can reasonably have no legitimate purpose other than the concealment of contraband. 
Evans
, 259 Ill. App. 3d at 655. The 
Evans
 court held that the small wooden box in that case, which was very similar to defendant’s box in this case, was not a single-purpose container. Therefore, the box by itself could not provide the officer with probable cause to search it. 
Evans
, 259 Ill. App. 3d at 657.

However, the circuit court denied defendant’s motion to suppress regarding the two loaded handguns seized from defendant’s vehicle. The court concluded that the weapons were not tainted under the “fruit of the poisonous tree” doctrine. The court noted that, based on defendant’s traffic violation, Gebke had the right to remove defendant from his vehicle. Further, the circuit court found that once defendant was out of the truck, the seizure of the handguns was justified based on Gebke’s plain view of the handgun between the seat cushions. The court reasoned: “It does not matter that the officer’s reason for asking the defendant to get out of the truck was based upon his illegal seizure of the purported marijuana box, since the deputy’s subjective intention is not the test to determine the constitutionality of a search.”

Defendant waived his right to a jury trial and subsequently agreed that the evidence adduced at the suppression hearing would serve as the evidence at a stipulated bench trial. On March 25, 2002, the circuit court found defendant guilty as charged. On April 15, 2002, the court reversed its suppression of defendant’s box and its contents. The court explained that “the one-hitter box is drug paraphernalia and criminal contraband under the Drug Paraphernalia Control Act [720 ILCS 600/1 
et seq.
 (West 2000)]. As such, the arresting officer’s plain view observation of the device and seizure thereof is permissible. The court repudiates its earlier reliance on the ‘single-purpose’ doctrine to support suppression of the cannabis.” The circuit court denied defendant’s motions to reconsider the court’s suppression denial and the judgment finding defendant guilty as charged.

On May 14, 2002, the circuit court held a sentencing hearing. Defendant had no prior criminal convictions, and received an honorable discharge from military service. The court allowed defendant to speak prior to sentencing. Defendant acknowledged the seriousness of his conduct, and stated that he had learned a valuable lesson. Based on recommendations from defense counsel and the prosecution, the circuit court sentenced defendant to serve one year of conditional discharge and to pay a $300 fine and court costs, and ordered that the handguns be destroyed.

Defendant timely appealed. The appellate court reversed defendant’s convictions and sentence. 344 Ill. App. 3d 413. The court held that defendant’s box was not a single-purpose container and, consequently, could not, by itself, furnish probable cause to search and seize it. 344 Ill. App. 3d at 425. Further, the court held that section 2 of the Drug Paraphernalia Control Act (720 ILCS 600/2 (West 2000)) did not define “one-hitter” boxes as drug paraphernalia and, in any event, the Act did not add to a probable cause analysis. 344 Ill. App. 3d at 425-26. The appellate court lastly concluded that the handguns and ammunition should be excluded from evidence because they were “fruit of the poisonous tree” and their discovery was not inevitable. 344 Ill. App. 3d at 426-27. 

We allowed the State’s petition for leave to appeal. 177 Ill. 2d R. 315(a). We observe that defendant was sentenced in May 2002. Therefore, he could have already served his sentence of one year of conditional discharge. However, the probability that a criminal defendant may suffer collateral legal consequences from a sentence already served precludes a finding of mootness. 
Minnesota v. Dickerson
, 508 U.S. 366, 371 n.2, 124 L. Ed. 2d 334, 343 n.2, 113 S. Ct. 2130, 2135 n.2 (1993) (and cases cited therein). Additional pertinent background will be discussed in the context of the analysis of the issues.

ANALYSIS

In reviewing a circuit court’s ruling on a motion to suppress, mixed questions of law and fact are presented. Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses’ demeanor, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review 
de novo
 the ultimate question of whether the evidence should be suppressed. 
People v. Pitman
, 211 Ill. 2d 502, 512 (2004); 
People v. Sorenson
, 196 Ill. 2d 425, 430-31 (2001).

I. Reasonableness

The fourth amendment to the United States Constitution protects the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV; see also 
Elkins v. United States
, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960) (observing that fourth amendment applies to state officials through the fourteenth amendment). In this case, the State, as appellant, contends: “The appellate court’s reversal of defendant’s conviction rests upon a misapplication of the Fourth Amendment and should be reversed.” Likewise, defendant bases his arguments solely on the fourth amendment.

The central requirement of the fourth amendment is reasonableness. 
Illinois v. McArthur
, 531 U.S. 326, 330, 148 L. Ed. 2d 838, 847, 121 S. Ct. 946, 949 (2001). The touchstone of a fourth amendment analysis “is always ‘the reasonableness in all the circumstances of the particular governmental invasion of a citizen’s personal security.’ ” 
Pennsylvania v. Mimms
, 434 U.S. 106, 109, 54 L. Ed. 2d 331, 335, 98 S. Ct. 330, 332 (1977), quoting 
Terry v. Ohio
, 392 U.S. 1, 19, 20 L. Ed. 2d 889, 904, 88 S. Ct. 1868, 1878-79 (1968). Indeed, the “essential purpose” of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement officers, to safeguard the privacy and security of individuals against arbitrary invasions. 
Delaware v. Prouse
, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979) (and cases cited therein). To enforce the fourth amendment requirement of reasonableness, the United States Supreme Court “has interpreted the Amendment as establishing rules and presumptions designed to control conduct of law enforcement officers that may significantly intrude upon privacy interests.” 
McArthur
, 531 U.S. at 330, 148 L. Ed. 2d at 847, 121 S. Ct. at 949. Generally, reasonableness under the fourth amendment requires a warrant supported by probable cause. 
Katz v. United States
, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967).

However, the United States Supreme Court has “made it clear that there are exceptions to the warrant requirement. When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.” 
McArthur
, 531 U.S. at 330, 148 L. Ed. 2d at 847, 121 S. Ct. at 949. Thus, the reasonableness of a particular law enforcement practice is judged by balancing its promotion of legitimate governmental interests against its intrusion on fourth amendment interests, 
i.e.
, the individual’s right to personal security free from arbitrary interference by law enforcement officers. 
Prouse
, 440 U.S. at 654, 59 L. Ed. 2d at 667-68, 99 S. Ct. at 1396 (and cases cited therein); 
Mimms
, 434 U.S. at 109, 54 L. Ed. 2d at 336, 98 S. Ct. at 332, quoting 
United States v. Brignoni-Ponce
, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614-15, 95 S. Ct. 2574, 2578-79 (1975). Or, put more simply, a court balances “the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.” 
McArthur
, 531 U.S. at 331, 148 L. Ed. 2d at 848, 121 S. Ct. at 950.

A. 
Traffic Stop

The fourth amendment is implicated in this case because stopping a vehicle and detaining its occupants constitute a “seizure” within the meaning of the fourth amendment, even if only for a brief period and for a limited purpose. 
Whren v. United States
, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996) (and cases cited therein); 
Prouse
, 440 U.S. at 653, 59 L. Ed. 2d at 667, 99 S. Ct. at 1396. Therefore, a vehicle stop is subject to the fourth amendment requirement of reasonableness in all the circumstances. 
Whren
, 517 U.S. at 810, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772.

The United States Supreme Court has observed that the usual traffic stop is more analogous to a 
Terry
 investigative stop than to a formal arrest. 
Knowles v. Iowa
, 525 U.S. 113, 117, 142 L. Ed. 2d 492, 498, 119 S. Ct. 484, 488 (1998); 
Berkemer v. McCarty
, 468 U.S. 420, 439, 82 L. Ed. 2d 317, 334, 104 S. Ct. 3138, 3150 (1984). Accordingly, courts generally analyze fourth amendment challenges to the reasonableness of traffic stops under 
Terry
 principles. See, 
e.g.
, 
United States v. Sharpe
, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 613, 105 S. Ct. 1568, 1573 (1985). Pursuant to 
Terry
, a law enforcement officer may, under appropriate circumstances, briefly detain a person for questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. 
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. However, the investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. 
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983). This aspect of 
Terry
 has been codified in our Code of Criminal Procedure of 1963. 725 ILCS 5/107–14 (West 2000).

In this case, Gebke observed that the vehicle which defendant was driving had inoperable tail lights, a clear violation of our vehicle code. See 625 ILCS 5/12–101, 12–201 (West 2000) (making it unlawful to drive vehicle without operable tail lights); 625 ILCS 5/3–833 (West 2000) (making it unlawful for any person to own or operate a vehicle on the public highways of this state without complying with the Illinois Vehicle Code). Thus, Gebke’s initial stop of defendant’s vehicle was supported by probable cause and, therefore, was justified at its inception. See, 
e.g.
, 
Mimms
, 434 U.S. at 109, 54 L. Ed. 2d at 336, 98 S. Ct. at 332. At this point, without more, Gebke lacked the authority to search defendant. Stopping an automobile for a minor traffic violation does not, by itself, justify a search of the detainee’s person or vehicle. The officer must reasonably believe that he or she is confronting a situation more serious than a routine traffic violation. 
Knowles
, 525 U.S. at 116-18, 142 L. Ed. 2d at 498-99, 119 S. Ct. at 487-88.

B. 
The “One-Hitter” Box

It is uncontradicted that when defendant handed his driver’s license to Gebke, the trooper saw a small wooden box in plain view in defendant’s front shirt pocket. Further, Gebke recognized this type of box as an item of drug paraphernalia known as a “one-hitter” box. During a 
Terry
 investigative stop, police may seize an object without a warrant if the encounter meets the requirements of the plain view doctrine: (1) the officers are lawfully in a position from which they view the object; (2) the incriminating character of the object is immediately apparent; and (3) the officers have a lawful right of access to the object. 
Dickerson
, 508 U.S. at 374-75, 124 L. Ed. 2d at 344-45, 113 S. Ct. at 2136-37 (and cases cited therein). The “ ‘seizure of property in plain view involves no invasion of privacy 
and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.
’ ” (Emphasis in original.) 
Texas v. Brown
, 460 U.S. 730, 741-42, 75 L. Ed. 2d 502, 513, 103 S. Ct. 1535, 1543 (1983) (plurality op.), quoting 
Payton v. New York
, 445 U.S. 573, 587, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380 (1980). “Plain view” requires probable cause to permit a seizure. 
Arizona v. Hicks
, 480 U.S. 321, 326, 94 L. Ed. 2d 347, 355, 107 S. Ct. 1149, 1153 (1987). However, if police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, 
i.e.
, if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure. 
Dickerson
, 508 U.S. at 374-75, 124 L. Ed. 2d at 345, 113 S. Ct. at 2136-37 (and cases cited therein).

In this case, the circuit court ultimately found that the box was drug paraphernalia and, as such, Gebke’s plain view observation and seizure thereof were permissible. The appellate court disagreed, holding that the box, by itself, could not furnish probable cause to seize and search it.

“With these considerations in mind, we find that the circumstances involved here do not show that Gebke had probable cause to search either the box observed in the defendant’s front shirt pocket or the remainder of the vehicle’s contents. The only reason offered by Gebke justifying his search of the box was Gebke’s conclusion that the box was ‘drug paraphernalia’ based upon his training and work experience. However, Gebke testified that this was only a suspicion that was confirmed after he had opened the box. Further, Gebke conceded that the box could contain a variety of nonillicit items and that it did not have only one purpose. There was no testimony showing that the box itself or the circumstances surrounding Gebke’s view of it suggested that it contained contraband. Gebke believed that he was conducting a routine traffic stop. Gebke did not believe that the defendant’s vehicle contained contraband at the time of the stop, nor did he suspect the defendant of committing any other crime other than inoperable taillights. Gebke had no reason to search the vehicle or to ask the defendant to step outside. In fact, the sole reason offered by Gebke for his search of the box was his belief that such boxes contain contraband based upon his training and work experience. This alone does not establish probable cause.” 344 Ill. App. 3d at 425.

The appellate court further held that the subsequent discovery of the handgun was not inevitable. 344 Ill. App. 3d at 426-27.

Assigning error to these holdings, the State asserts two alternative contentions. First, the State contends that there was no fourth amendment violation to taint the subsequent discovery of the handguns. The State argues that Gebke had probable cause to seize and search the box and to arrest defendant. Consequently, Gebke was entitled to order defendant out of the vehicle. Second, relying on 
Pennsylvania v. Mimms
, 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977), and 
Whren v. United States
, 517 U.S. 806, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996), the State contends that, regardless of probable cause, Gebke was objectively authorized to order defendant to exit the vehicle during the traffic stop. The State argues that Gebke then would have seen the butt of the handgun protruding from the front seat cushions in plain view. See 
United States v. Hensley
, 469 U.S. 221, 235-36, 83 L. Ed. 2d 604, 616-17, 105 S. Ct. 675, 683-84 (1985).

We agree with the State that Gebke had probable cause to seize and search the box and to arrest defendant. Probable cause means more than bare suspicion. Probable cause exists where the arresting officer has knowledge of facts and circumstances that are sufficient to justify a reasonable person to believe that the defendant has committed or is committing a crime. 
Brinegar v. United States
, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310-11 (1949), quoting 
Carroll v. United States
, 267 U.S. 132, 162, 69 L. Ed. 543, 555, 45 S. Ct. 280, 288 (1925). Probable cause is a practical, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent persons–not legal technicians–act. Probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts; it is not readily, or usefully, reduced to a neat set of legal rules. The substance of all of the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized. 
Maryland v. Pringle
, 540 U.S. 366, 371, 157 L. Ed. 2d 769, 775, 124 S. Ct. 795, 800 (2003) (and cases cited therein). 

Further, in deciding whether probable cause exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person. 
Ornelas v. United States
, 517 U.S. 690, 700, 134 L. Ed. 2d 911, 921, 116 S. Ct. 1657, 1663 (1996); 
Brown
, 460 U.S. at 746, 75 L. Ed. 2d at 517, 103 S. Ct. at 1545 (Powell, J., concurring, joined by Blackmun, J.). “ ‘[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’ ” 
Brown
, 460 U.S. at 742, 75 L. Ed. 2d at 514, 103 S. Ct. at 1543 (plurality op.), quoting 
United States v. Cortez
, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (1981). A court must examine the events leading up to the search or seizure, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable law enforcement officer, amount to probable cause. 
Pringle
, 540 U.S. at 371, 157 L. Ed. 2d at 775-76, 124 S. Ct. at 800, quoting 
Ornelas
, 517 U.S. at 696, 134 L. Ed. 2d at 919, 116 S. Ct. at 1661-62.

In this case, Gebke testified as to his training and experience. Gebke’s training to become a state trooper included a week-long course in drugs and drug detection. In this course, controlled substances were exhibited, along with drug paraphernalia that included containers such as “one-hitter” boxes. This course was similar to prior training he received. Further, in his experience as an Illinois state trooper and previously as a Marissa police officer, Gebke had encountered “one-hitter” boxes at least 24 times. In each of these instances, the box was used as drug paraphernalia and for no other purpose.

The appellate court’s reasoning is mistaken in light of the above-stated precedents. We refuse to define the exact number of training hours or employment years necessary to render an officer’s belief reliable. As stated earlier, what constitutes probable cause for searches and seizures must be determined from the standpoint of the officer, with the officer’s 
skill and knowledge
 being taken into account. 
Ornelas
, 517 U.S. at 696, 700, 134 L. Ed. 2d at 919, 921, 116 S. Ct. at 1661-62, 1663. We agree with the State that perhaps a reasonable civilian could fail to recognize a “one-hitter” box as drug paraphernalia. However, civilians do not receive special training in drug paraphernalia and rarely encounter these boxes in their daily lives.

Further, the appellate court’s above-quoted analysis inaccurately describes Gebke’s trial testimony. According to the appellate court, Gebke conceded that he had only a suspicion that the box was drug paraphernalia and that the box did not have only one purpose, but that it could have contained a variety of nonillicit items. Defendant called Gebke as an adverse witness. During direct examination, Gebke’s testimony included the following:

“Q. All right. Again, I ask you, what did you see in [defendant’s] shirt pocket at that time?

* * * 

A. I [saw] a small wooden box I readily identified as drug paraphernalia.

Q. Oh. Okay. Well, did it say on it ‘drug paraphernalia’?

A. No, it didn’t.

THE COURT: The point is why do you conclude that the box was drug paraphernalia.

THE WITNESS: Well, the–my training and years of work, they’re all the same. They’re just a small wooden box, the top slides open, the pipe shoots out; and on the other side, there’s a cavity inside the box that holds cannabis, or any other kind of controlled substance.

Q. Now Officer, isn’t it true that these small wooden boxes that you just described are sold by tobacco shops that do not sell cannabis? Isn’t that true?

A. I don’t know where they buy them.

Q. You don’t know where the boxes are bought? You don’t know–Do you know where the boxes are made?

A. No, I don’t.

Q. Do you know that if they’re made solely for the purpose of concealing drug paraphernalia?

* * *

A. I don’t know what they’re made for.

* * *

Q. Well, excuse me, I’m jumping ahead here. Did you end up searching his vehicle?

A. After he handed me the wooden box, I opened up–

Q. But–

A. And I confirmed my suspicions. There was a pipe in there–

Q. A-hhh–

A. –and there was cannabis in there.

Q. –you confirmed your suspicions? So, you didn’t really know what was in that box, did you, Officer? It could have contained cigarettes, couldn’t it?

A. I’ve never seen it contain cigarettes before.

Q. Well, I’m not asking you what you’ve never seen that it contained. But the fact of the matter is, it could have contained cigarettes? Or thumbtacks? Or chewing gum?

A. You can go on and on what it could contain.

Q. Yes, that’s absolutely correct. This was not a single-purpose box, was it? It didn’t serve just one purpose, did it?

A. I guess you could say that.

Q. Thank you. So, after you took the box from Mr. Jones, did you–you examined the contents, is that correct?

A. Yes, I did.

Q. And you confirmed your suspicions that it had cannabis in it, is that correct?

A. Yes, I did.”

This colloquy simply indicates that Gebke did not know beyond a reasonable doubt that the box contained cannabis.

Gebke was not called upon to determine whether an offense had in fact been committed. 
Dumbra v. United States
, 268 U.S. 435, 441, 69 L. Ed. 1032, 1036, 45 S. Ct. 546, 548-49 (1925). Probable cause means less than evidence which would justify a conviction. 
Brinegar
, 338 U.S. at 175, 93 L. Ed. at 1890, 69 S. Ct. at 1310. The “immediately apparent” or “probable cause” element does not require a law enforcement officer to “ ‘know’ that certain items are contraband or evidence of a crime.” Probable cause, 
i.e.
, sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime, “does not demand any showing that such a belief be correct or more likely true than false.” 
Brown
, 460 U.S. at 741-42, 75 L. Ed. 2d at 513-14, 103 S. Ct. at 1543 (plurality opinion). “ ‘Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision.’ ” 
Pringle
, 540 U.S. at 371, 157 L. Ed. 2d at 775, 124 S. Ct. at 800, quoting 
Illinois v. Gates
, 462 U.S. 213, 235, 76 L. Ed. 2d 527, 546, 103 S. Ct. 2317, 2330 (1983). We agree with the observation made by the United States Supreme Court in 
Brinegar
 regarding probable cause:

“These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community’s protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers’ whim or caprice.” 
Brinegar
, 338 U.S. at 176, 93 L. Ed. at 1890-91, 69 S. Ct. at 1311.

These principles confirm the reasonableness of Gebke’s encounter with defendant and his“one-hitter” box.

Gebke’s reasonable belief that the “one-hitter” box contained cannabis was not absolutely guaranteed to be correct. However, Gebke was trained to recognize “one-hitter” boxes. Also, he had encountered them over 24 times, in every instance finding cannabis. Based on his training and experience, Gebke deduced that defendant’s one-hitter box probably contained cannabis. Gebke’s training as a law enforcement officer and his experience with other “one-hitter” boxes met the standard required for probable cause, which justified the seizure of the box.

Having determined that Gebke’s warrantless 
seizure
 of defendant’s “one-hitter” box was lawful, we must next determine whether Gebke’s warrantless 
search
 of the box was likewise lawful. Although the plain view doctrine may support the warrantless seizure of a container believed to contain contraband, a subsequent search of its concealed contents must be either accompanied by a search warrant or justified by one of the exceptions to the warrant requirement. 
Horton v. California
, 496 U.S. 128, 141 n.11, 110 L. Ed. 2d 112, 126 n.11, 110 S. Ct. 2301, 2310 n.11 (1990); 
United States v. Jacobsen
, 466 U.S. 109, 114, 80 L. Ed. 2d 85, 94-95, 104 S. Ct. 1652, 1657 (1984); 
Brown
, 460 U.S. at 749-51, 75 L. Ed. 2d at 518-20, 103 S. Ct. at 1547-48 (Stevens, J., concurring in the judgment, joined by Brennan and Marshall, JJ.) (plain view doctrine supports warrantless seizure of closed container but not warrantless search of its contents).

However, where the contents of a seized container are a foregone conclusion, this prohibition against warrantless searches of containers under the plain view doctrine does not apply. Courts have held that when a container is “not closed,” or “transparent,” or when its “distinctive configuration proclaims its contents,” the container supports no reasonable expectation of privacy and the contents thereof can be said to be in plain view. Where law enforcement officers already possess knowledge as to the contents of the container, the search of the container does not unreasonably infringe upon the individual interest in preserving the privacy of those contents. 
United States v. Williams
, 41 F.3d 192, 197-98 (4th Cir. 1994); 
United States v. Corral
, 970 F.2d 719, 725-26 (10th Cir. 1992); 
United States v. Eschweiler
, 745 F.2d 435, 440 (7th Cir. 1984); 
Vassar v. State
, 99 P.3d 987, 995 (Wyo. 2004), quoting 
Corral
, 970 F.2d at 725-26.

For at least 20 years, the Illinois law enforcement community has had experience with “one-hitter” boxes. In 
People v. Smith
, 103 Ill. App. 3d 430 (1982), 
rev’d
, 95 Ill. 2d 412 (1983), a police officer, during a routine traffic stop, saw in plain view a “one-hitter” box. He seized and opened it, revealing cannabis and a white substance. The circuit court denied the defendant’s motion to suppress. The appellate court reversed defendant’s resulting drug conviction, reasoning as follows:

“The closed wooden box found on the floor of the defendant’s vehicle was undistinctive in its appearance. However, law enforcement officials apparently knew that this type of box was commonly used for the transportation of marijuana. Their subjective knowledge, while relevant, is not conclusive. Rather, the container must be evaluated to determine whether society as a whole would recognize it as one commonly used to carry a controlled substance. One could not automatically conclude that marijuana was contained within that wooden box. Its shape did not imply its contents, nor was it in any way transparent or open, subjecting its contents to public view.” 
Smith
, 103 Ill. App. 3d at 433.

The appellate court held that the warrantless search of the defendant’s closed “one-hitter” box violated the fourth amendment.

This court disagreed with the above-quoted reasoning and reversed the appellate court. Regarding the issue of probable cause to search the defendant’s vehicle, this court stated:

“In determining whether the officer had probable cause, his factual knowledge, based on law-enforcement experience, is relevant. [Citations.] Before entering the vehicle the officer observed the small wooden box with a sliding top. Based on his own knowledge and experience with such containers, the officer recognized it as a ‘one-hitter box’ commonly used to carry cannabis.” 
Smith
, 95 Ill. 2d at 419-20.

While this court decided 
Smith
 in the context of the automobile exception to the warrant requirement, this court nevertheless recognized the role of law enforcement experience in the probable cause determination. See 
People v. Ward
, 205 Ill. App. 3d 439, 442-44 (1990) (explaining 
Smith
).

In 
People v. Evans
, 259 Ill. App. 3d 650 (1994), as in the present case, a law enforcement officer observed a “one-hitter” box in plain view during a routine traffic stop. The officer took the box from the defendant, opened it, and found cannabis inside the box. The circuit court denied the defendant’s motion to suppress evidence. The appellate court reversed the defendant’s resulting drug conviction, holding that the warrantless search of the box violated the fourth amendment. The appellate court noted the significant training and experience of the arresting officer. 
Evans
, 259 Ill. App. 3d at 653. However, the court reasoned:

“[D]espite the officer’s suspicion that the wooden box was likely to contain contraband, in the absence of additional incriminating circumstances, we are not persuaded that the box was sufficiently distinctive so as to announce its contents. While there was a chance that it could contain cannabis, there was also an equally plausible chance that it could have contained ‘innocent’ objects such as ordinary tobacco or even thumbtacks [citation].” 
Evans
, 259 Ill. App. 3d at 657.

The 
Evans
 court distinguished 
Smith
 “because in 
Smith
 there were other indices of unlawful activity or contraband in addition to the officer’s seeing the one-hitter box to support a finding of probable cause to search.” 
Evans
, 259 Ill. App. 3d at 658.

The appellate court’s reasoning in 
Evans
 suffers from the same defect as the appellate court’s reasoning in 
Smith
, which this court reversed. Law enforcement experience is relevant in determining probable cause, but the appellate court did not recognize such experience in its analysis. As this court reversed the appellate court’s judgment in 
Smith
, we hereby overrule 
Evans
.

In the present case, the appellate court stated that Gebke’s training and experience “alone does not establish probable cause” that defendant’s “one-hitter” box contained cannabis. 344 Ill. App. 3d at 425. This conclusion is erroneous based not only on 
Smith
, decided 20 years ago, but also based on the law enforcement experience gained subsequent to 
Smith
. As discussed during oral argument, the experience of the Illinois law enforcement community with respect to “one-hitter” boxes has grown in the decade subsequent to 
Evans
. Indeed, we need not look far to see the continued recognition of “one-hitter” boxes as drug paraphernalia. See, 
e.g.
, 
McArthur
, 531 U.S. at 329, 148 L. Ed. 2d at 846, 121 S. Ct. at 949 (“The officers found under the sofa a marijuana pipe, a box for marijuana (called a ‘one-hitter’ box), and a small amount of marijuana”).

Viewed from Gebke’s standpoint, taking into account his training and experience, we conclude that defendant’s “one-hitter” box proclaimed its contents. To a civilian, it is possible that Gebke’s belief could seem to be a mere “suspicion.” To Gebke, however, the contents of the box were a virtual certainty. See, 
e.g.
, 
Vassar
, 99 P.3d at 995 (upholding, under fourth amendment, warrantless search of “one-hitter” box during traffic stop where box in plain view, based on experience and training of arresting officer and distinctive configuration of box); 
State v. Miles
, 108 N.M. 556, 558-59, 775 P.2d 758, 760-61 (1989) (same). We hold that Gebke’s seizure and search of defendant’s “one-hitter” box did not violate the fourth amendment.

C. 
The Guns

Since Gebke had probable cause to seize and search defendant’s box, and since the box contained what Gebke reasonably believed to be cannabis, Gebke had probable cause to arrest defendant. Accordingly, Gebke was authorized to order defendant out of the vehicle to effectuate the arrest. When defendant exited the vehicle, Gebke saw in plain view the butt of the handgun protruding from the front seat cushions. See 
Dickerson
, 508 U.S. at 375, 124 L. Ed. 2d at 345, 113 S. Ct. at 2136-37. Further, when Gebke effectuated a lawful custodial arrest of defendant, Gebke was authorized, as a contemporaneous incident of that arrest, to search the entire passenger compartment of that vehicle, which produced the loaded handgun and additional bullets behind the rear seat. See 
New York v. Belton
, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981). We hold that the discovery of the handguns was not tainted by any fourth amendment violation. Accordingly, we do not address the State’s alternative contention that Gebke was objectively authorized to order defendant to exit the vehicle during the traffic stop.

CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of St. Clair County is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed
.