# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Scott*, 2012 IL App (5th) 100253

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL E. SCOTT, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket Nos. 5-10-0253, 5-10-0254 cons. |
| Filed | January 19, 2012 |
| Rehearing denied | February 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In prosecutions for possession of unstamped cigarettes, driving under the influence, and possession of cannabis, the trial court's order granting defendant's motion to suppress evidence and statements was reversed where the trial court's decision that no probable cause existed for the initial stop of defendant's vehicle for violating the improper-lane-usage statute was based on the court's erroneous belief that the statute was violated only when other persons on the roadway or their property were endangered, and in defendant's case, there was no evidence that defendant endangered anyone or any property when his vehicle went over the fog line, and the cause was remanded for further proceedings, including consideration of the additional grounds for suppression raised by defendant. |
| Decision Under Review | Appeal from the Circuit Court of Effingham County, Nos. 09-CF-233, 09-DT-338; the Hon. Sherri L.E. Tungate, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Eugene N. Bian, Michael M. Glick, and Eldad Z. Malamuth, Assistant Attorneys General, of counsel), for the People.

Michael J. Pelletier, Johannah B. Weber, and John H. Gleason, all of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Panel

JUSTICE STEWART delivered the judgment of the court, with opinion.
Justices Welch and Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    After a traffic stop for improper lane usage, the defendant, Michael E. Scott, was charged with possession of unstamped cigarettes in case number 09-CF-233 and with driving under the influence of drugs and possession of cannabis in case number 09-DT-338. He filed motions to suppress evidence and statements in both cases. After an evidentiary hearing, the court granted the motions. The State filed a certificate of substantial impairment and a timely notice of appeal. The two cases were consolidated for this appeal. We reverse and remand.

¶ 2                    BACKGROUND

¶ 3    We summarize the pertinent evidence introduced at the hearing on the motions to suppress as follows. Effingham County sheriff's deputy Darin Deters, who had been a law enforcement officer for four years, was on duty in a marked squad car during the early morning hours of November 4, 2009. He testified that he had received training on how to conduct traffic stops and had made between 800 and 900 traffic stops as a law enforcement officer. In his training, he was taught to look for violations of the Illinois Vehicle Code when patrolling in his squad car.

¶ 4    Deputy Deters testified that he was patrolling northbound on Interstate 57 when he noticed a gray Kia passenger car that crossed over the white fog line on the right side of the interstate twice for a couple of seconds each time. He did not notice any other vehicles or pedestrians in the vicinity. Deputy Deters testified that both the front and rear right-side tires crossed over the fog line. At approximately 2:50 a.m., Deputy Deters began following three to four car lengths behind the Kia. The Kia exited the interstate. As Deputy Deters followed the car, both the front and rear right-side tires again crossed the fog line on the exit ramp, and this time both tires were over the fog line for about 250 feet. He estimated that the defendant was driving at about 50 miles per hour on the exit ramp. Deputy Deters testified that he suspected that the defendant might be impaired, sleepy, or distracted, all of which are safety

-2-

concerns. The defendant testified that he was aware of the squad car following him, that it was not possible that his tires crossed over the fog line, and that he was going to a nearby truck stop for coffee and donuts when the officer pulled him over.

¶ 5    After he observed the Kia make a left turn from the exit ramp, Deputy Deters called in the traffic stop and his location to the dispatcher and activated his overhead emergency lights, which caused the driver of the Kia to pull over. Deputy Deters walked to the driver's door of the Kia and used his flashlight to look inside the vehicle and observe the defendant as he explained the reason for the stop and asked for identification and proof of insurance. Deputy Deters did not notice anything illegal in the interior of the car and did not smell any alcohol, cannabis, or other illegal drugs. He asked the defendant where he had been and where he was going. The defendant told him that he had traveled from Chicago to the St. Louis area to shop and that he was on his way back to Chicago, where he lived. The defendant showed the officer a bag he said contained a pair of long underwear he had purchased.

¶ 6    Deputy Deters testified that the defendant's behavior "stood out just a little bit" because he was more nervous than usual for a person pulled over for a traffic violation. He said that the defendant's "movements appeared almost mechanical like they would jerk," that his movements were "very robotic," that his hand trembled, and that his carotid artery was pulsing. He testified that he thought the defendant's eyes were red and irritated but that he had not listed red or irritated eyes in his report. He did not think the defendant's explanation for his trip, that he traveled all the way from Chicago to the St. Louis area just to buy a pair of long underwear, made much sense. From his training, Deputy Deters was certain there was some type of illegal activity taking place in the defendant's vehicle. At that point, Deputy Deters returned to his squad car and called for an officer with a drug-detection dog to come to the scene to conduct a walk-around of the defendant's vehicle. While waiting, Deputy Deters completed a written warning for improper lane usage as a result of observing the defendant cross the fog line. Within a couple of minutes, Deputy Robert Rich of the Effingham County sheriff's department arrived with his narcotics-detection dog, Jaeger.

¶ 7    Deputy Rich had 22 years' experience with the sheriff's department and had been a canine handler since 2001. Deputy Rich testified about his and Jaeger's training and the procedures they employ when conducting a dog sniff of the exterior of a vehicle. Jaeger alerted to the driver's door, to the front passenger door, and again to the driver's door of the defendant's vehicle. Deputy Rich informed Deputy Deters that Jaeger had alerted on the vehicle, and he put the dog back in his squad car. Deputy Deters exited his squad car, went to the defendant's car, and asked him to get out. Deputy Rich began searching the interior of the defendant's car as Deputy Deters questioned the defendant. Deputy Rich testified that he was aware of Deputy Deters talking to the defendant, but he was searching the car and could not hear what they were saying. Deputy Deters testified that he told the defendant that Jaeger had alerted to the car, and Deputy Deters asked him if there was anything illegal in his car. The defendant told him there was a marijuana cigarette in an eyeglasses container in the car. Deputy Deters testified that he asked the defendant when he had last smoked marijuana, and the defendant replied that he had smoked it twice earlier in the day. The defendant acknowledged that he told Deputy Deters that he had smoked earlier that day, but

denied that he had told him he smoked marijuana twice.

¶ 8        As Deputy Deters was talking to the defendant, Deputy Rich said that he had found a marijuana cigarette in the car. Deputy Rich then opened the trunk and found two large boxes of cigarettes. Deputy Deters opened one of the cartons of cigarettes and noticed that the top two cigarette packs were stamped with State of Missouri tax stamps, but not State of Illinois tax stamps. Deputy Deters testified that the defendant said times were tough, that he did not have a job, and that he was planning to sell the cigarettes. Deputy Deters placed the defendant under arrest for possession of cannabis and driving under the influence of drugs and placed him in the squad car. He then called for the defendant's car to be towed and began a tow inventory of the car. He took the marijuana and the cartons of cigarettes into custody and transported the defendant to jail. At the jail, Deputy Deters also issued the defendant a citation for possession of unstamped cigarettes.

¶ 9        In its ruling from the bench, the trial court commented on the credibility of the witnesses, but made no finding as to whether it believed the defendant's vehicle crossed the fog line. The court stated as follows:

> "Clearly if you read the definition of improper lane usage, there has been nothing provided by the State to show in any manner that someone was put in jeopardy because it does provide that the vehicle should not be moved from a lane until the movement can be made with safety. There is no testifying or testimony here that he almost impacted with anything or almost hit anyone.
>
> ***
>
> So after having considered the testimony, judging the credibility of the witnesses, the Court finds that there was no probable cause for the stop initially and the Defendant's Motions to Suppress are granted."

¶ 10                                           ANALYSIS

¶ 11       A review of a trial court's ruling on a motion to suppress involves mixed questions of law and fact. *People v. Jones*, 215 Ill. 2d 261, 267 (2005).

> "Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question of whether the evidence should be suppressed." *Id*. at 268.

Although the defendant raised multiple grounds in support of his motions to suppress evidence and statements, the only ground relied upon by the trial court in granting the motions was a finding that the officer had no probable cause for the initial stop. Since this determination was based upon the court's interpretation of the improper-lane-usage statute,

-4-

our review is *de novo*.

¶ 12   Vehicle stops are "subject to the fourth amendment requirement of reasonableness in all the circumstances." *Id.* at 270. We analyze the reasonableness of traffic stops under the principles set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968).

"Pursuant to *Terry*, a law enforcement officer may, under appropriate circumstances, briefly detain a person for questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. [Citation.] However, the investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. [Citation.] This aspect of *Terry* has been codified in our Code of Criminal Procedure of 1963. 725 ILCS 5/107-14 (West 2000)." *Jones*, 215 Ill. 2d at 270-71.

Thus, under *Terry*, the analysis involves a dual inquiry: (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the stop. *People v. Al Burei*, 404 Ill. App. 3d 558, 562-63 (2010). Because the trial court granted the motions on the ground that the traffic stop was not justified at its inception, we confine our analysis to the first part of the *Terry* inquiry.

¶ 13   The preliminary consideration, that the officer reasonably believes that the person has committed or is about to commit a crime, is satisfied when the officer observes a violation of the vehicle code. *Jones*, 215 Ill. 2d at 271 (the officer was justified in making the initial traffic stop when he observed the defendant driving with inoperable taillights, "a clear violation of our vehicle code"); see also *People v. Smith*, 172 Ill. 2d 289, 297 (1996) (the officer had probable cause to arrest the defendant because he observed a violation of the improper-lane-usage statute). Therefore, in the case at bar, if Deputy Deters observed the defendant violate the improper-lane-usage statute, he was justified in effecting the initial traffic stop.

¶ 14   "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known" to the officer at the time he acts. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). We are required to focus our inquiry on the objective reasonableness of the officer's conduct at the moment of the arrest and to decide whether the facts and circumstances within his knowledge at that time were sufficient to warrant a prudent man to believe that the defendant had committed or was committing an offense. *Carmichael v. Village of Palatine, Illinois*, 605 F.3d 451, 457 (7th Cir. 2010). "The reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more." *Id.*

¶ 15   The improper-lane-usage statute provides as follows:

"Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2010).

In *Smith*, the Illinois Supreme Court considered the defendant's argument that the arresting officer did not have probable cause to stop him for a violation of the improper-lane-usage

statute because he had not endangered anyone by momentarily crossing over a lane line. *Smith*, 172 Ill. 2d at 296. The court rejected the defendant's argument, stating that the statute establishes two separate, exclusive requirements: (1) that a motorist must drive the vehicle as nearly as practicable entirely within one lane and (2) that a driver may not move from one lane of traffic until he or she has determined the move can be made safely. *Id.* at 296-97. The court ruled that "when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." *Id.* at 297. The court determined that the officer's observation of the defendant crossing over the lane line, without any testimony or evidence concerning the safety of that maneuver, was sufficient justification to provide the officer with probable cause to arrest the defendant. *Id.*

¶ 16        Recently, the Third District Appellate Court interpreted the ruling in *Smith* when it affirmed a trial court's grant of a motion to suppress. *People v. Hackett*, 406 Ill. App. 3d 209 (2010), *appeal allowed*, No. 111781 (Ill. Mar. 30, 2011). In *Hackett*, the arresting officer testified that he had observed the defendant cross over the lane divider twice for a matter of seconds each time. *Id.* at 211. A majority of the *Hackett* court, over a vigorous dissent, interpreted *Smith* to require that an officer observe a driver cross a lane line "for some reasonably appreciable distance" before he would have probable cause to stop the driver for improper lane usage. *Id.* at 214. The court held that the officer's observation of the defendant's vehicle crossing the lane line twice for a few seconds each time was insufficient cause to stop the defendant's vehicle. *Id.* at 215. We reject the analysis of the *Hackett* court as contrary to the holding in *Smith*. The supreme court did not interpret the improper-lane-usage statute to require that an officer observe a driver cross a lane line for a particular distance in order to have probable cause to stop the vehicle. Rather, the court plainly stated that "when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." *Smith*, 172 Ill. 2d at 297.

¶ 17        It is apparent from the record that the trial court believed that a driver could only violate the improper-lane-usage statute if driving outside of a single lane endangered other persons on the roadway or their property. There was no claim in this case that the defendant's driving endangered anyone. Thus, credibility determinations played no role in the trial court's decision. Deputy Deters testified that he observed the defendant cross over the fog line twice for a couple of seconds each time while following him on Interstate 57. Each time, both right-side tires were over the fog line. This testimony was sufficient, if believed, to show that Deputy Deters reasonably believed that the defendant violated the improper-lane-usage statute and to provide the officer with probable cause to effect the initial traffic stop. The trial court did not reject Deputy Deters's testimony about these observations, but merely determined that there was no evidence that what he observed endangered anyone. Thus, the trial court's ruling that evidence of endangerment was essential to the finding of probable cause in this case was based upon an erroneous interpretation of the improper-lane-usage statute and must be reversed.

¶ 18        We note that the defendant testified that he did not cross the fog line while being followed by Deputy Deters, and the trial court never determined whether it believed the testimony of the officer or the defendant on this issue. The court simply determined that, in the absence of evidence of endangerment, probable cause for the initial stop did not exist.

Further, the defendant asserted additional grounds for the suppression of evidence and statements which were not reached by the court. Accordingly, this cause must be remanded for further proceedings not inconsistent with this decision.

¶ 19                        CONCLUSION

¶ 20       For all of the foregoing reasons, the trial court's order granting the defendant's motions to suppress evidence and statements is reversed, and this cause is remanded for further proceedings.

¶ 21       Reversed and remanded.